PHEBE A. WOODBURN

*v.*

JAMES H. WOODBURN *et al.*

*Filed at Ottawa November 11, 1887—Rehearing denied March Term, 1888.*

1. CONSIDERATION—*surrender of claim to land devised, as a consideration for an agreement by a beneficiary to relinquish an interest in the fund.* Where a residuary legatee, who in good faith claims the title to or an interest in land directed by the will of his father to be sold to make a provision for the payment to the testator's widow of the yearly sum of $1000 from the interest on the proceeds, gives up his claim, and agrees to quit-claim to the purchaser all his interest in the premises, this will form a sufficient consideration for an agreement by the widow to relinquish, in his favor, her right to the interest upon a stipulated portion of the fund.

2. ADMINISTRATION OF ESTATES—*trust fund created by will, to be kept intact.* A testator directed his executor to sell land claimed by him, and that the proceeds should constitute a fund, the interest of which, to the extent of $1000, was to be paid to his widow during her life, and after her death was to go to his son for his use during his life, and at his death to his children. The son became the purchaser for the price of $15,150, for which he gave his notes to the executor. The son sold a part of the premises to the widow for $2180, for which she gave her notes to the executor, who credited that amount on the son's notes. On bill by the widow, the court directed the cancellation and surrender of these notes to her, in payment of the debt due her from the executor: *Held,* that the notes of the widow were a part of the trust fund, and should have been held and kept intact by the executor, and that it was error to order them to be surrendered, and that the error was not cured by an order that when the amount of the notes should be collected of the executor, it should be re-invested in securities to be held as a part of the fund.

3. INTEREST—*rate, when not fixed by contract.* Where interest, simply, is named in a contract, the rate of interest, where nothing appears to the

contrary, will be six per cent, the rate fixed by the statute, where there is no contract as to rate.

4.  Purchaser—*at executor's sale—purchase by one owning a part interest.*  A sale of land by an executor, to a son of the testator, will not be set aside at his instance, merely for the reason that at the date of the sale he was the beneficial and real owner, when it appears, from a decree in partition, that he was the owner only of an undivided half thereof.  Such a decree, however erroneous, can not be disregarded in a collateral proceeding.

5.  Donatio mortis causa—*delivery to a third person.*  A testator, while his will was being drawn, a few days before his death, handed a note held by him on his son, to the executor, who was writing the will, saying, "You give that note to James (the son) in case he does not contest the will," and directed that if he did, to collect the same.  The executor then handed the note to the widow, and told her to take care of it, who returned it to the place from which it was taken, but he afterward received it from the widow and gave it to the son, who did not contest the will:  *Held,* that there was a complete and valid donation of the note *mortis causa.*  The delivery in such case may be to a third person, for the donee.

6.  Practice in the Supreme Court—*assigning error upon a decree against another.*  A decree in chancery, in settling the rights of parties in an estate, charged against the executor of the estate the amount of a certain promissory note which had been given to his testator in his lifetime by a son of the latter.  The executor resisted the charge on the ground that the testator had made a gift of the note to the maker of it, the son, *mortis causa.*  The charging of the note against the executor was a determination against such a gift.  The beneficiary of the gift was a party to the suit, and was enough of a party in interest, as respects the subject matter of the gift, to entitle him to assign as error the rendering of the decree for the amount of this note against the executor, in favor of the estate.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Whiteside county; the Hon. John V. Eustace, Judge, presiding.

This is an appeal by Phebe A. Woodburn from the judgment of the Appellate Court for the Second District, rendered upon a writ of error sued out of said court by James H. Woodburn, wherein was reversed, *in part,* a decree of the circuit court of Whiteside county in favor of said Phebe A. Woodburn.

George W. Woodburn, father of James H. Woodburn, and late husband of Phebe A. Woodburn, died on or about June 19,

1872, leaving a will, wherein Peter Ege was appointed executor. The will directed the executor to sell all the testator's real estate,—being the farm on which he lived,—or so much thereof as might be necessary for the payment of his debts, "also to sell an amount sufficient to raise a fund sufficient to pay of interest to my beloved wife, Phebe Ann Woodburn, $1000 per year, which amount shall be for her support during her lifetime, and at her death this fund shall go to my legal heirs in the order below mentioned,—that is, to my son, James H. Woodburn, if living, for his use during his lifetime, at his death to go to his children," etc. The residue of the testator's property was to go to his son, James H. Woodburn, in fee simple. Another direction was, that until such sale the widow should receive for her support the proceeds of the farm. The last clause directed "that in case the proceeds of the farm do not make one thousand ($1000) dollars, as in item above stated, my executor pay, or cause to be paid, to my beloved wife, Phebe Ann Woodburn, the difference,—it being my will and desire that she should have $1000 per year for her support, both before and after the fund is created by sale, as my executor is herein directed to do." James H. Woodburn was the only child and heir of George W. Woodburn.

The executor had advertised the sale of the real estate, in pursuance of the will, and on the morning of the sale, March 13, 1873, an agreement in writing, under the hands and seals of Phebe A. Woodburn and James H. Woodburn, was entered into between them, which, after reciting the provision of the will that Phebe A. Woodburn should have for her support, during her lifetime, the interest of a fund sufficient to make of interest a sum of $1000 per annum, out of the real estate of George W. Woodburn, and that there appeared to be a cloud upon the title of said real estate, by reason of a claim set up by James H. Woodburn, the agreement proceeded, that therefore, in consideration of one dollar in hand paid, "and for the further consideration that the said party of the second part

(James H. Woodburn) shall join in making a clear title to said real estate, the said Phebe A. Woodburn, party of the first part, does waive and relinquish, in favor of said James H. Woodburn, party of the second part, all the interest of said fund except the interest on the sum of $8000 per annum." The sale at public auction afterward, on the same day, took place, and all the real estate, except twenty acres of timber land, was sold to James H. Woodburn, for $15,150. The terms of the sale were, one-third cash, and the residue, in equal sums, in one and two years, at ten per cent interest.    The widow afterward bought of James H., as of the day of the sale, the homestead part of the premises, consisting of two and one-fourth acres, for the sum of $2180, and, by agreement of parties, made her notes for the latter sum, and mortgage securing them, direct to the executor, bearing ten per cent interest; and thereafter, for several years, there was paid to the widow $800, as her annuity, James H. paying $600 annually to the executor as interest on his purchase money, and $200 additional was counted by the executor as interest, retained by the widow on her own mortgage.

All the real estate claimed as belonging to George W. Woodburn at the time of his decease was a part of two hundred and twenty acres of land, the state of the title to which two hundred and twenty acres appears as follows: On July 3, 1848, the legal title to the two hundred and twenty acres was in James C. Woodburn, a brother of George W. On that day James C. made a deed of trust of the land to John Galt, which contained recitals as follows: "Whereas, the said James C. Woodburn holds the title in fee simple of certain lands in Whiteside county, State of Illinois, purchased by him from the people of the United States, agreeable to directions from Agnes Woodburn, of the county of Cumberland, and State of Pennsylvania, who supplied the said James C. Woodburn the purchase money. * * * She directed James C. Woodburn to invest it in public lands in Whiteside county, State of Illinois, the one-

half of said investment to belong to James Henric Woodburn, the sole heir of G. W. Woodburn, and the other half to remain in the hands of some suitable person for other heirs of said George W. Woodburn, should he have any such, otherwise to belong to the said James Henric Woodburn also, and that the net proceeds belong to J. H. Woodburn in full as long as he is sole heir, and should he die before coming into full possession, and there being others at his death, the property should belong to those heirs. Agreeable to the above directions, James C. Woodburn purchased the lands, which he now deeds to John Galt in trust for said heirs. (The deed then proceeds to convey the lands to John Galt, describing them.) The whole containing two hundred and twenty acres, * * * to have and to hold, receive and take the same to the said John Galt, his heirs, executors and administrators, in trust, however, and to the intent and purpose that he, the said John Galt, shall hold the estate to the sole use and benefit of the heirs of G. W. Woodburn, or that he shall sell the same, if need may require, for the benefit of said heirs, and render and pay over to said heirs their respective shares, as directed by said Agnes Woodburn in her direction to said James C. Woodburn." Agnes Woodburn was the mother of James C. and George W. Woodburn.

On November 23, 1871, George W. Woodburn filed his bill for partition in the circuit court of Whiteside county, against James H. Woodburn and others, praying for a partition of the lands described in the trust deed from James C. Woodburn to John Galt, in which bill he averred that he, George W. Woodburn, was seized in fee simple of the one undivided half part of the lands, and that Susan Woodburn, wife of James H. Woodburn, appeared to be of record the owner of the other undivided half part. The order of partition found that George W. Woodburn was entitled in fee to one undivided half part of the premises, and that James H. Woodburn was entitled to a like one undivided half part, and partition was made accordingly, at the March term, 1872, of the court.

In the warranty deed of the homestead of two and one-fourth acres, from James H. Woodburn to Phebe A. Woodburn, there was a mistake in the description, it not covering the premises, and at the March term of court, 1880, Mrs. Woodburn brought an action of covenant against James H. Woodburn on his deed of warranty. He then filed his bill in chancery against her for the correction of the mistake and to enjoin the suit at law. This bill in chancery is the first of the series of suits in this litigation. Mrs. Woodburn answered the bill, and then filed a cross-bill, setting up that the aforesaid agreement of March 13, 1873, between herself and James H. Woodburn, was fraudulently obtained by said James H. from her through false and fraudulent representations, and praying that the same might be set aside.

At the March term, 1881, there were pending in the circuit court of Whiteside county this bill and cross-bill, a bill in chancery filed by Mrs. Woodburn against the executor, Peter Ege, for an accounting, and two appeals by Peter Ege, executor, from the county court,—one in the case of an order to pay over to Mrs. Woodburn a certain sum found to be due from him, and the other in the case of a final report made by Ege, as executor. At said March term, on motion of Mrs. Woodburn, and against the objection of James H. Woodburn and Peter Ege, an order was entered consolidating these several cases, and that they be heard together, which was done.

The decree of the circuit court set aside the agreement of March 13, 1873, as made without any good and valuable consideration; ordered payment to Mrs. Woodburn, out of the estate, of the sum of $2859.78, of which sum there should be paid to her $2180 by the surrender to her of her promissory notes for that sum. The mistake in the deed from James H. Woodburn to Mrs. Woodburn was corrected. There was a matter of contention in regard to a promissory note from James H. Woodburn 'to George W. Woodburn, for $3050,— whether there had been a valid gift of the note from the latter

to the former as a *donatio mortis causa*,—and the circuit court found there had not been.

The Appellate Court reversed the decree of the circuit court in so far as it set aside the agreement of March 13, 1873, but ordered that Mrs. Woodburn should be paid for her annuity $800 per annum, instead of "the interest on $8000 per annum," as provided by the terms of said agreement, and also reversed the decree in respect of the disposition it ordered to be made of the notes of Mrs. Woodburn for $2180.

Messrs. J. & J. DINSMOOR, for the appellant:

There was no consideration for the agreement of March 13, 1873, and it should have been set aside.

Appellees' counsel cite authorities to the effect that the settlement of a doubtful right is a sufficient consideration. To make those cases applicable, James H. Woodburn must have *honestly* thought he had some claim to this land.

As to the donation of the notes to James H. Woodburn, see *Grymes* v. *Howe*, 49 N. Y. 17; *Sims* v. *Sims*, 8 Porter, 449; *Tillinghas* v. *Wheaton*, 8 R. I. 536; *Sheedy* v. *Roach*, 124 Mass. 472; *Drury* v. *Smith*, 1 P. Wms. 404; *Sessions* v. *Mosely*, 4 Cush. 87; 3 Redfield, 329, note.

Woodburn can not assign errors in behalf of Ege. *Van Valkenburg* v. *Trustees*, 66 Ill. 103; *Meyer* v. *Pfeiffer*, 50 id. 485; *Wright* v. *Bishop*, 88 id. 302; *Worden* v. *Crist*, 106 id. 326; *National Bank* v. *King*, 110 id. 254; *Van Pelt* v. *Dunford*, 58 id. 145; *Bowman* v. *Railroad Co*. 102 id. 459.

Messrs. MANAHAN & WARD, for the appellee James H. Woodburn:

As to the reformation of the contract for mistake, see *Sutherland* v. *Sutherland*, 69 Ill. 481; *Nevins* v. *Dunlap*, 33 N. Y. 676; *Levyard* v. *Insurance Co*. 24 Wis. 496; *Gordere* v. *Downing*, 18 Ill. 492; *Palmer* v. *Converse*, 60 id. 314; Kerr on Fraud and Mistake, 421; Story's Eq. Jur. sec. 152.

When interest is mentioned in a contract, and no specific rate is mentioned, legal interest is meant. *Ford* v. *Hixon*, 49 Ill. 142; *Bond* v. *Lockwood*, 33 id. 212; *Prevo* v. *Lathrop*, 1 Scam. 305.

Mr. C. J. JOHNSON, and O. F. WOODRUFF, for the same appellee:

It was error to decree null and void the agreement of March 13, 1873. The compromise of a doubtful right is a sufficient consideration. *McKinley* v. *Watkins*, 13 Ill. 140; *Sigsworth* v. *Cutter*, 18 id. 204; *Miller* v. *Hanker*, 66 id. 185; *Honeyman* v. *Guardian*, 79 id. 318; *Huston* v. *Epling*, 81 id. 172.

So is the waiver of any legal right at the request of another. 1 Parsons on Contracts, 144; Chitty on Contracts, 33, 35; *Miller* v. *Hanker, supra.*

The court erred in ordering cancelled the .note and mortgage made by Phebe A. Woodburn to Ege. Perry on Trusts, sec. 539.

The court erred in consolidating the several cases. 1 Tidd's Pr. 614; *Miles* v. *Danforth*, 37 Ill. 156.

There was a valid gift, *mortis causa*, of the notes. The following cases hold that the gift may be valid without an actual delivery: *Grymes* v. *Howe*, 49 N. Y. 17; *Sims* v. *Sims*, 8 Porter, 449; *Grover* v. *Grover*, 24 Pick. 261; *Westerlo* v. *Dewitt*, 36 N. Y. 340; *Darland* v. *Taylor*, 52 Iowa, 503; *Camp's Appeal*, 36 Conn. 88; *Hill* v. *Stevens*, 63 Me. 364; *Sheedy* v. *Roach*, 124 Mass. 472.

Mr. C. J. JOHNSON, for the appellee Ege.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

It is solely the judgment of the Appellate Court which the appellant, Phebe A. Woodburn, complains of as erroneous, and that is in the respects, first, in ordering that Phebe A.

Woodburn should be paid her annuity provided for by the will of George W. Woodburn, upon the basis of $800 per annum, in place of $1000 per annum, as directed by the will; second, in the disposition it ordered to be made of the notes and mortgage of Phebe A. Woodburn, for $2180.

The purport of the first assignment of error is, that the Appellate Court erred in sustaining the agreement of March 13, 1873, between Mrs. Woodburn and James H. Woodburn, whereby she relinquished all the interest of the fund provided by the will for her support except the interest on the sum of $8000. The cross-bill of Mrs. Woodburn sought to have the agreement set aside on the ground that it had been fraudulently obtained from her by James H. Woodburn. Neither of the lower courts appears to have found there was any fraud in the transaction, and we concur in the same view, not finding the charge of fraud to be sustained by the evidence. But the circuit court did find that the agreement was without any good and valuable consideration, and on that ground set it aside. Waiving any question as to the variance of this finding from the allegations of the cross-bill, we will consider as to the correctness of the finding.

The evidence shows that upon the death of George W. Woodburn, all his interest in the real estate in question ceased, and the whole title was in James H. Woodburn, except for the technical estoppel of the partition proceeding which had been had between George W. and James H. There was no evidence in the record of that proceeding to sustain the decree therein; but the decree was by default, and no evidence may have been necessary. The time for suing out a writ of error had not expired, so that there was yet opportunity to question the correctness of the partition decree on writ of error or by bill of review. There was, to some extent, a cloud upon the title, in the public mind, and this was manifested at the time of the public sale at auction, by inquiry upon the subject, in response whereto James H. Woodburn, before the commencement of

the sale, made public announcement that he had made arrangement with Mrs. Woodburn, and would quitclaim to the purchaser at the sale all his interest in the land. The question is not whether James H. Woodburn had actual title or interest in the land, but whether he honestly claimed an interest, or there was a cloud upon the title the removal of which by James H. would tend to promote the sale and enhance the price which the land would bring. We think, from the evidence, there did exist such a cloud upon the title; that its removal by James H. was of benefit to Mrs. Woodburn, in its tendency to enhance the price to be obtained for the land, and thereby increase the fund from the interest on which her annuity was to come, and that it would be of inconvenience to him in making a deed of relinquishment of his interest. We are of opinion there is found sufficient to furnish a consideration for the agreement made by Mrs. Woodburn.

As respects the notes for $2180, of Mrs. Woodburn, the proceeds of the sale of the real estate ($15,150) constituted, under the will of George W. Woodburn, a fund, the interest of which, to the extent of $1000, was to be paid to Mrs. Woodburn during her life. After her death this fund was to go to James H. Woodburn, for his use during his lifetime, and at his death to go to his children. Of the land bought by James H. at the executor's sale, he sold a portion—the homestead—to Mrs. Woodburn, for which she gave her notes to the executor for $2180. He took these notes and held them, by the understanding of all the parties, as a part of this fund. He gave credit for that amount on the notes of James H. Woodburn, which he had given to the executor for the purchase price of the whole land. Mrs. Woodburn, in her answer, states that she gave the executor two notes, of $1250 each, and secured the same by mortgage, "of which said sum so secured by said mortgage, defendant (Mrs. Woodburn) is informed and believes that $2180 was to be regarded as a part of said fund, and to be substituted for the notes and mortgage that said complain-

ant (James H. Woodburn) was to have executed and delivered to said Ege, as executor, as aforesaid." So, then, these notes were a part of this trust fund, and should have been held and kept intact, and it was improper to cancel them, and order them to be surrendered up to Mrs. Woodburn in payment of her individual debt due from the executor. Nor was the error relieved by the direction that when the amount of the notes should afterwards be collected from the executor it should be re-invested in securities to be held as a part of the fund. We are of opinion the Appellate Court ordered rightly in respect to these notes.

The appellee James H. Woodburn has assigned cross-errors in this court, as follows: That the Appellate Court erred in holding that under said agreement James H. Woodburn should pay Mrs. Woodburn $800 per annum, instead of "the interest on the sum of $8000 per annum," as the agreement reads. Where interest, simply, is named, the rate of interest, where nothing appears to the contrary, will be six per cent, the rate fixed by the statute, where there is no contract as to rate. It is not unlikely, from all the attendant circumstances, that the parties intended the rate of interest here to be ten per cent, and that the agreement, as it reads, fails to express the understanding of the parties in that regard. It was probably ten per cent interest that was in their minds. The notes James H. gave for the land he bought, bore that rate of interest. The notes Mrs. Woodburn gave for the part she purchased from James H. bore ten per cent interest. It was ten per cent interest ($800) which was paid to Mrs. Woodburn, under the agreement, for several years. In a letter of James H. to Mrs. Woodburn, he alludes to it as $800 which she was to have under the agreement.

But it is said that this order of the court, in this respect, amounted to a reforming of the contract by the Appellate Court, and that there was no allegation in the cross-bill to warrant it, there being in it no charge of any mistake in the con-

tract, or prayer for the correction of any mistake. This may be a debatable question, and as there is to be a reversal on another ground, there will be afforded opportunity to amend the cross-bill in this respect, and we will dismiss this question without further remark. We can not say the court erred in ordering the costs of the entire consolidated suits to be paid from the trust fund. Manifestly, the sale of the real estate to James H. Woodburn should not be set aside, as is insisted, for the reason that at the date of the sale he was the beneficial and real owner of the lands sold. He could not be said to be such owner in the face of the partition decree. That decree can not be put aside and disregarded in this collateral proceeding.

A further assignment of cross-error is in respect of the note of James H. Woodburn to George W. Woodburn, the testator, for $3050, which was claimed to belong to James H. as a *donatio mortis causa* made to him by the testator. In respect of this note the circuit court rendered a judgment against Peter Ege, as executor of the last will of George W. Woodburn, deceased, for the face of the note and interest, amounting to the sum of $8604.52. The testimony of Ege is, that at the time he was writing the will, a few evenings before the testator's death, this note, at the testator's request was brought to him, the testator, by Mrs. Woodburn; that the testator afterward handed the note to Ege, saying: "You give that note to James in case he does not contest the will. * * * If he contested the will I was to collect the note, if I could, for the benefit of Mrs. Phebe A. Woodburn. I handed the note over to Mrs. Phebe A. Woodburn, and told her to take care of it. I next saw the note a long time after that. Mrs. Woodburn gave it to me, and told me that everything was satisfactory, or had been satisfactory, and for me to give it to James H. Woodburn, which I did." The note remained with the latter, who produced it at the hearing. The executor charged himself with the note, and also gave himself a credit for it, doing this,

he says, to show what was done with the note in case of any question concerning it.

James H. Woodburn testified that he had a conversation with Mrs. Woodburn in regard to the note, after the testator's death; that she asked him if he knew what had become of the note, or what was to be done with the note. He replied he did not, whereupon she said that it was to be given up to him; that she said: "Your father left the note to be given up to you in case you did not contest the will." "I said it ought to be given up to me." Mrs. Woodburn, however, denies that she handed the note, at the time the will was being drawn, either to her husband or Ege, and denies that she gave the note to Ege after the death of her husband, directing him to give it to James H.

The master to whom the cause was referred to take the testimony in the case, and report his finding of facts, by his first report found, from the testimony, the fact to be as testified to by Ege, as regards the delivery by the testator of the note to Ege, and the latter delivering it to Mrs. Woodburn, the master stating further, the note was put back by her (Mrs. Woodburn) in the pocket-book from whence it was taken, and was among the papers of George W. Woodburn, deceased, when Col. Ege took possession of them as executor. Exception was taken to this finding of the master, but does not appear to have been passed upon by the court. At a subsequent term the case was *re-referred* to the master, under specific directions. The second report of the master, which was approved, charged the note against Ege in his account with the estate; but this may have been but the master's conclusion of law from the facts which had before been found by him. The master's former finding of fact does not appear ever to have been disturbed. The surrender, by the executor, of the notes to James H. Woodburn, goes to the strengthening of his testimony. Upon consideration of the whole evidence, our conclusion is, that the statements of Ege and James H. Wood-

burn in the matter should be accepted as to the facts; and according to their testimony, we think there was here a complete and valid donation of the note *mortis causa.* The delivery, which in such case is essential, may be either to the donee or to another person for him. There was, here, according to the testimony of Ege, an absolute delivery of the note to Ege, to be given to James H. Woodburn in case he did not contest the will, and if he did, then to collect it for Mrs. Woodburn. The testator never afterward resumed possession of the note or revoked the delivery, or manifested any intention or desire to do so. If the note was afterward placed back by Mrs. Woodburn in the pocket-book from whence it was taken, as found by the master, this was not a resumption of possession by the testator, but it was done by one of the conditional donees of the note, for its safe keeping.

It is said that James H. Woodburn can not assign this as cross-error, because it affects only Peter Ege, and that Peter Ege, one of the appellees, is not entitled to make this objection to the decree, as he did not assign cross-errors in this court. But he did assign this as a cross-error in the Appellate Court, and we think this was sufficient to entitle him to insist upon it here.

We think there was error in not finding that there was a gift *mortis causa* of this note to James H. Woodburn, and in decreeing against the executor the payment of the amount of the note.

The decree and judgment of the courts below will be reversed, and the cause remanded to the circuit court for further proceedings conformable to this opinion. Leave is given to amend the cross-bill touching the matter of mistake referred to in the written agreement between Phebe A. and James H. Woodburn, and to introduce any further evidence in that particular. The appellant will pay the costs in this appeal.

*Judgment reversed.*

Subsequently, on March 23, 1888, on an application for rehearing, the following additional opinion was filed:

Per CURIAM: After a careful consideration of the petition for a rehearing in this case, we find no sufficient reason for changing the conclusion which we reached in our former opinion, and a rehearing will be denied. The language of the opinion, however, in some particulars requires modification.

It was said in the opinion, that Peter Ege, executor, filed cross-errors in the Appellate Court to the finding that there was due from him, as executor of the estate of George W. Woodburn, deceased, the sum of $8604.52. Upon an examination of the record, we find that Peter Ege did not assign such cross-error in the Appellate Court. We were led into this misapprehension from the statement of the counsel for Ege that he did assign that cross-error in the Appellate Court. James H. Woodburn did assign in the Appellate Court that finding against Ege as error. The question then is, whether James H. Woodburn's assignment of error will justify us in reviewing this finding.

The resistance of Ege against being charged in his final report as executor with the amount of this $3050 note of James H. Woodburn to George W. Woodburn, was upon the ground that there had been a gift of the note from the latter to the former *mortis causa*. The charging of Ege with the amount of this note as due from him to the estate of George W. Woodburn, was a determination against such a gift. If there was not such a gift, then James H. Woodburn would be liable over to Ege for the payment of the note. Ege's appeal from the charging of this $3050 note against him in his final report as executor, was consolidated in the circuit court with the chancery suit between James H. Woodburn and Phebe Woodburn, and James H. Woodburn, after such consolidation, actually participated in the defence made by Ege against being charged as executor with said $3050 note, as the record shows that he

filed exceptions to the master's report made in such consolidated suit with respect to said note, wherein he insisted the report should state specifically that the note should be given up to him. If there had been no valid gift of the note *mortis causa,* James H. Woodburn would ultimately be liable for its payment; and in any further action against him upon the note, by Ege, as executor, we are not prepared to say that this charging of Ege, as executor, with this note and judgment against him for the amount of the note, would not be conclusive evidence against James H. Woodburn that there had been no valid gift *mortis causa* of the note to him, under the principle, that where one is liable over in the case of a judgment against another, and he defends or had notice to make defence in the action wherein the judgment was rendered, such judgment, in a subsequent suit against him, will be conclusive evidence of his liability. (See *Drennan* v. *Bunn,* 124 Ill. 175.) We think James H. Woodburn was enough of a party to the suit, and of a party in interest, to entitle him to assign as error the rendering of the judgment for the amount of this note against Ege, as executor, in favor of the estate of George W. Woodburn.

We may have misapprehended that the amount, $8604.52, with which Ege was charged, as executor, and for which judgment was rendered against him in favor of the estate, was made up wholly of the principal of this $3050 note, and interest on it. We decide nothing more against the indebtedness found due from Ege, as executor, to the estate of George W. Woodburn, than in respect of this note—that he should not have been charged therewith.