## Permelia E. Reed
### v.
## Henry M. Barnum, Executor.

86 525
136s 388

*Gift* Causa Mortis—*Construction—Evidence.*

1. In this case it is held that the evidence establishes a gift *causa mortis*.
2. A gift of a fund to a trustee with directions to pay the interest thereon to a certain person, without limitation as to the duration of the trust, is, upon the donor's death, equivalent to a gift to such person of the principal.

[Opinion filed May 28, 1890.]

Appeal from the Circuit Court of Stephenson County; the Hon. Wm. Brown, Judge, presiding.

Mr. Horatio C. Burchard, for appellant.

The validity of gifts made under similar conditions has been sustained by many, and nearly uniform decisions of the highest State courts, including our own.

It has been held in Pennsylvania (Nicholas v. Adams, 2 Wharton, 17), that assenting to the statement "if you die Nicholas is to have the watches; if you recover, they are to be returned to you," the watches then being delivered, is a good *donatio causa mortis;* in Indiana (Baker v. Williams, 34 Ind. 547), that where money was placed by a soldier in the hands of S, a third person, with the declaration that if he, the soldier, "should return alive it should be repaid to him, but if he should not return alive and claim the money S should pay it over to the soldier's sister," it was held a completed delivery and valid gift to the sister; also in Wyblee v. McPeters, 52 Ind. 393, a delivery of bonds and money to B with directions by the grantor to deliver them upon his death to certain of his grandchildren, was held good, and that an action would lie against B upon his refusal to execute the trust; in New York (Grymes v. Hone, 49 N. Y. 19), that the declaration of the donor that his wife should keep the assignment (of a cer-

tificate of shares of stock) and "not hand it over till after his death, as he did not know what might happen, nor but that they might need it," was simply a statement of the law as to such gift, whether the declaration was or was not made. In Wisconsin (Henschall v. Maurer, 69 Wis. 576), the holder of a note and mortgage, in expectation of death, to avoid the expense of making a will, delivered to Maurer the note and mortgage and executed satisfaction, with directions to deliver them, after his death, to the maker; held, the satisfaction and delivery constituted, as matter of law, a valid gift *causa mortis*. In Tennessee (Goss v. Simpson, 4 Cold. 288), Carter, having enlisted in the army, when about to leave home placed a sum of money and notes and receipts in the hands of Mary Simpson, his sister, stating that if he never returned he wanted it all to be given to her son George. He died in the service; held, a good *donatio causa mortis*. In Michigan (Bostwick v. Mahaffy, 48 Mich. 342), an invalid gave directions to his amanuensis that certain money should, at his death, be paid over to his daughter; held, a valid *donatio causa mortis*. In New Hampshire (Jones v. Brown, 34 N. H. 439), keys were delivered to Mrs. Fitts with directions "to deliver them after the death" of the donor to her nieces; the drawers contained money and bedding, and donor said she wanted nieces to have the things in the house. Mrs. Fitts took and kept keys until after donor's death, and then gave them to nieces; held, a good *donatio causa mortis*. In Vermont (Blanchard v. Sheldon, 43 Vt. 512), where Sheldon had promised in writing "to pay Aurilla Ballou $300, with annual interest, if she called for it before she deceased, and if not, to be paid to Daniel M. Blanchard by her order," and Aurilla Ballou died without having called for it, the court, in sustaining Blanchard's right to the money, said: "We do not see upon principle how a gift, if absolute and delivered to a third person for the donee, but not to be delivered to the donee till the happening of some event, or if liable to be defeated if a certain event occurs, is any the less a valid gift." In Maine (Hill v. Stevens, 63 Me. 364), a savings bank book was delivered to a third person, saying: "I give the money in that

bank on that book to Harriet and Isabella, and want you to take the book and take care of it, and after my decease divide the money equally between them;" held, a valid gift. In Kentucky (Merriweather v. Morrison, 78 Ky. 573), Merriweather indorsed two notes to Agnes Morrison, and handed them to third person, telling him to hand them to her after his death; held, a complete delivery and valid gift. In Massachusetts (Clough v. Clough, 117 Mass. 83) the delivery of $400, during the last sickness, to a brother, with directions to invest and hold it until a son became of age, was held to be a good *donatio causa mortis*. A later decision, Turner v. Easterbrook, 129 Mass. 425, is a still stronger case for appellant.

Gifts *causa mortis*, under conditions involving the same questions, have been sustained in other cases in the States above named and in Connecticut, Delaware, Maryland, Mississippi, Iowa and Illinois, but further reference seems unnecessary, except to Virgin v. Gaither, 42 Ill. 39, and Woodburn v. Woodburn, 123 Ill. 608; also Comer v. Comer, 24 Ill. App. 526.

Mr. HENRY C. HYDE, for appellee.

There was no gift, because, by her letter to Barton, Mrs. Davis parted with none of her rights in the property during her life. The legal and equitable title, as well as the possession, remained in her till her death.

The books contain many definitions of a gift *mortis causa*. Some of them are confined to a statement of what the donor must do to make such a gift, and the circumstances under which it must be made. But others go further, and include the conditions subsequent which the law attaches to the gift, thus creating some confusion, unless care is used to distinguish between what the donor is required to do in making the gift and the conditions subsequent. There is really but one thing which, in the making of a gift *mortis causa*, distinguishes it from a gift *inter vivos*, namely, it must be made in anticipation of death near at hand. In every other respect the same things are essential in making both gifts. After a gift *mortis*

*causa* has been made as complete and perfect in all respects as is required in the case of a gift *inter vivos*, then the law attaches to the former two conditions which do not apply to the latter, namely—it can be reclaimed by the donor before his death, and his recovery from the impending peril revokes it.

But in making either gift the donor must part with the possession of the subject of the gift, and divest himself of all present interest, dominion and control over it as the owner. The right which had been in the donor must *eo instanti* of the gift be vested in the donee. The conditions subsequent which the law attaches to a gift *mortis causa* permitting the donor to reclaim the gift, and revoking it in the event of his recovery, do not change or affect this rule. If the donor could make a gift *mortis causa*, and retain the possession of, and control over, the subject of the gift, then there would be no use for or sense in these conditions permitting him to reclaim the gift and revoking it on his recovery, for there would be nothing for the conditions to operate upon—nothing to reclaim, nothing to be revoked, no gift. A gift made to take effect upon the death of the donor, when the subject of the gift remains in the possession or under the control of the donor, can not be sustained either as a gift *inter vivos* or *mortis causa;* it is nothing but an attempted testamentary disposition of the property. All the leading cases, when these questions have been fairly presented and carefully considered, sustain these views. Basket v. Hassell, 17 Otto, 602; Young v. Young et al., 80 N. Y. 422; Martin v. Funk et al., 75 N. Y. 134; Walter et al. v. Ford, 74 Mo. 195; Daniel et al. v. Smith, Adm'r, et al., 64 Cal. 346; Hatch v. Atkinson et al., 56 Me. 324; Gano v. Fisk, 43 Ohio St. 462; Cline et al. v. Jones et al.,111 Ill. 563; Barnes v. The People, 25 Ill. App. 136.

C. B. SMITH, J. This was a bill in equity, brought by Henry M. Barnum against Edward P. Barton and Permelia E. Reed. Barnum was the executor of Mary L. Davis, who died testate on the 28th of May, 1889, leaving no husband, children or descendants of children. The will of Mary L.

Davis was duly probated and Barnum appointed executor.
No question arises out of the will. After Barnum entered
on his duty as executor he found certain notes and certificates
of deposit in a bank in the hands of Edward P. Barton, which
Barnum claimed to belong to the estate of Mary L. Davis, and
demanded of Barton that he surrender them to him as execu-
tor of Mary L. Davis. Mr. Barton being in doubt as to
whether these notes and bank certificates of deposit which
he then held belonged to the estate of Mrs. Davis or to Mrs.
Permelia E. Reed, declined to surrender them to the executor
without an order of the court requiring him to do so. Mrs.
Permelia E. Reed was a sister of Mrs. Davis and also claimed
to be the owner of these notes and certificates of deposit, and
hence this bill is filed to compel Barton to surrender these
papers, and for the further purpose of declaring that Mrs.
Reed is not the owner of them, and has no interest in them
except as she shares in the estate of her sister under the will.
The papers in controversy in this suit are as follows : Three
certificates of deposit in the Second National Bank of Freeport,
one for $1,700, dated Nov. 23, 1888, one for $60 Dec. 6, 1888,
and one for $90 Jan. 5, 1889, all drawing interest at three per
cent. One note of G. P. Kingsley Nov. 13, 1884, $2,000, and
one note of E. P. Barton May 28, 1888, for $2,000. These
certificates and notes are made exhibits to the bill. The bill
sets up that the only claim Barton has to the papers in ques-
tion is by virtue of the following letter addressed to him by
Mrs. Mary L. Davis, viz.:

13 (Exhibit I). Letter of Mary L. Davis to Edward P.
Barton, as follows:

"ROCK CITY, April 1, 1889.

"Hon. E. P. BARTON:—I may not live many days or hours,
and so write to you at once a few words at a time as I can,
Inclosed you will find your note, Kingsley's note and the
certificates on the bank. The interest is not due until May,
and about the same time. But I send them now because
they are safe with you and I can give you directions now.
I wish you to take enough of the interest money and the $50
which you will find inclosed, to bring the new certificate up

to $2,000, and if I am dead, of which you will be duly apprised, draw it in my sister's name, Mrs. Permelia Estes Reed, and send the interest, and the notes and interest on them, to her, as long as they continue, and when they are paid put them in the bank and send the interest to her. The remainder of the interest, due in May, send to me if alive, if not, to her. If I was strong enough I would entirely revise my will. Send me word if you get these papers and this money safely, so it may be off my mind. Good-bye.

"Respectfully,<br>"M. L. DAVIS."

Barton, in his answer, admits that the above letter contained all the authority and title he had to said papers, and constituted his only authority for holding them. He also makes as a part of his answer his reply to the above letter, showing his acceptance of the charge or trust or duty imposed upon him by the letter of Mrs. Davis. His reply was in the following words, viz.:

FREEPORT, ILL., April 2, 1889.

MRS. MARY L. DAVIS. Dear friend:—I received by yesterday's mail from you certificates of deposit to you from Second National Bank.

| | | | |
|---|---|---|---|
| 1st certificate for | $1,700; | dated | November 23, 1888. |
| 2d      "      " | 60; | " | December 6, 1888. |
| 3d      "      " | 90; | " | January 5, 1889. |
| 4th note to you from me | 2,000; | " | May 28, 1889. |
| 6th note to you from G. | | | |
| P. Kingsley | 2,000; | " | November 18, 1884. |
| 6th cash | 60; | | |

Total    $5,900.

Received same to collect interest when due on the notes in May next and on the $1,700 certificate, and to return to you if alive the two notes, a certificate of Second National Bank for $2,000, and the balance of the money. If you are dead when the interest matures in May, then I am to follow your letter of instructions in favor of Mrs. Permelia Estes Reed.

I am sorry to learn that you are feeling so uncertain of life.

The darkest time is just before the day. I hope you will recover at least your usual health.

Yours,

E. P. BARTON.

E. P. Barton, in his answer, declares his willingness to deliver these papers to such persons as the court shall direct.

The answer of Mrs. Permelia Reed avers that at the time the letter to Judge Barton was written, and for a long time prior thereto, her sister, Mrs. Davis, had been an invalid and had lived a good deal of her time with Mrs. Reed, and that she had taken a great deal of care of her when she was helpless, and that her sister, Mrs. Davis, had informed her just before this letter was written to Judge Barton that she intended to give her the money represented by these notes and certificates, for her care and attention, in addition to what had been given in the will, and that in carrying out that purpose Mrs. Davis sent these papers to Judge Barton with the instructions therein contained, and that Barton accepted the trust to hold these papers for appellant and apply them as directed by his letter to Mrs. Davis.

Appellant, Mrs. Reed, contends that this letter of Mrs. Davis to Judge Barton operated as a *donatio mortis causa*, or gift in expectation of death, and that the delivery of the property to him, and his acceptance thereof, amounted to a complete delivery to him for the use of appellant, and so constituted him a trustee or agent for appellant.

Issue was joined on these answers and the cause heard before the court. On the hearing the court found against the claim of Mrs. Reed, and found that the letter to Barton and his reply did not operate to divest Mrs. Davis of the property, and found that the money, notes and certificates constituted a part of the estate of Mrs. Davis, and that neither Mrs. Reed nor Barton was the owner thereof, and directed Judge Barton to deliver them to the administrator.

From that decree Mrs. Reed only presents this appeal and assigns for error the decree of the court in not finding that she was the owner of the property in controversy.

The only question before us, therefore, is to determine

whether the letter of Mrs. Davis to Judge Barton amounts to a gift *causa mortis*, and if not such a gift, so as to entitle Mrs. Reed to the absolute ownership and possession of the property, then whether it creates a trust in the hands of Judge Barton for the use of Mrs. Reed, to be executed and administered under the direction of the court.

The evidence taken on the trial showed that Mrs. Davis had been for some considerable time before her death an inmate of Mrs. Reed's house, and that she was almost, if not entirely, helpless for about six months before her death, and that she was constantly and tenderly cared for day and night by Mrs. Reed, who was her only sister. It is also in proof that for a good while before Mrs. Davis left her own house she was an invalid, and that Mrs. Reed spent a good deal of time with her in her own home taking care of her. There is also evidence showing her declaration within a day or so, and the very night before she wrote the letter to Judge Barton, that her sister should have pay for all her trouble and bother and that she should have all her personal effects. The proof is that Mrs. Davis wanted her sister to be with her. In the light of these circumstances we can have little doubt about the intention and purpose of Mrs. Davis when she wrote the letter, to make an absolute gift of all the property to her sister. But if it be conceded that parol evidence of antecedent declarations of Mrs. Davis are not admissible to explain or aid in the construction of the letter by showing her intention, and if we exclude all such declarations, taking the letter and construing it alone by what appears on its face without the aid of these extrinsic circumstances, we still think it reasonably certain and clear that Mrs. Davis intended to make her sister an absolute gift *causa mortis*, of all this property, both principal and interest.

She starts out with the declaration that she does not expect to live but a few days and perhaps but a few hours. She has made a will, but still desires to make some different disposition of this property while living. She directs that out of the money she incloses and the interest derived from the notes, the $1,700 certificate shall be raised to $2,000, and in

case of her death, this $2,000 certificate shall be issued by the bank in the name of her sister, Mrs. Reed, and she directs that the interest on this new certificate and the notes and the interest on the notes, shall be sent to Mrs. Reed, as long as they continue, and when they are paid their proceeds are to be put in the bank and the interest sent to Mrs. Reed. Just here the only difficulty in construing this letter arises, from an apparent failure on the part of Mrs. Davis to make any express disposition of the principal arising from the payment of all these sums, and after it is placed in the bank. After the money is all deposited in the bank, Barton is directed to send the interest to Mrs. Reed, without anything further being said as to the principal. But we think when all the parts of this instrument are considered together this difficulty is more apparent than real, and is not of controlling significance. The new certificate is to be issued in the name of Mrs. Reed. This direction as to that sum amounts to a clear legal transfer and assignment of the title of that amount of money to Mrs. Reed; when that certificate was issued to Mrs. Reed by the bank, she became absolutely the legal owner of that money, and had the right to reduce it to possession, unless there was some very clear expression found in the letter (and there is none) limiting such legal right. We must presume that the donor intended the legal consequences to follow her directions, and when she directs in unequivocal terms, that a certificate shall be issued to her sister for $2,000 in her own name, we are bound to presume she intended her sister to hold the legal title.

Now as to the notes; while there is no direction that these notes shall be assigned to her sister, still there is a clear and positive direction that they shall be sent to her and delivered to her. Not only the principal represented by these several papers, but also the interest is to be sent to her sister. She is to be invested with the possession of them. While the delivery of these notes unassigned to Mrs. Reed would not transfer to her the naked legal title, still it was sufficient to invest her with the equitable title and beneficial interest (Woodburn v. Woodburn, 123 Ill. 608,) so as to enable her to collect

them in a suit* in the name of Mrs. Davis for her own use, and by that means reduce the proceeds of the notes to her use. As to the certificates, she had the legal title when it was issued, or if not issued in that way it was the duty of Judge Barton to have it so issued, and the legal title carried with it the right of possession to Mrs. Reed. As to the notes, while the legal title did not pass by mere possession and delivery, still the rightful possession of Mrs. Reed, which she was and is entitled to have under this letter, invested her with the equitable title to the notes.

The clear legal effect, then, of the directions of Mrs. Davis in the body of this letter, is to invest Mrs. Reed with the legal and equitable title to all this property, and hence the failure or omission to state at the conclusion of the letter what shall be done with the aggregate amount after being placed in the bank, can not be regarded as a failure on the part of Mrs. Davis to dispose of the principal. Nor is the fact that she directs Judge Barton to place the proceeds of the notes and certificates in the bank, when paid, and to then send the interest to her sister, so inconsistent with the prior expressions investing her sister with the title to the property as to overthrow such title or to defeat the gift. We think this latter clause simply means that Judge Barton should look after the fund after the death of her sister until it should be reduced to money and placed in the bank.

While there is no express direction as to whose name or credit the final deposit in the bank should be made in, still we think it reasonably certain that she intended the deposit to be made in the name of her sister, Mrs. Reed. She did not expect to live to the time when the deposit should be made. She had already invested her sister with the legal title to some of it and the equitable title to the remainder, and it would seem to follow, as a legal necessity, that the deposit should be made in the name of Mrs. Reed.

We think, also, that this direction to send the interest to Mrs. Reed after the final deposit in the bank should be made, of the gross proceeds of these notes and certificate, will not be, as the construction contended for by appellee, that Barton

Reed v. Barnum.

was to retain indefinite control of the fund and interest. We
think this instruction to put the money in the bank and send
the interest to Mrs. Reed simply meant that whatever inter-
est the principal fund had earned at the time of the deposit
should then be sent to Mrs. Reed, and not deposited with the
principal, and that it was intended after he made the deposit
of the principal and sent the interest to Mrs. Reed, then his
connection with the whole matter should cease, and that Mrs.
Reed should thereafter manage her own money as she liked.
Adopting this construction the whole letter becomes reason-
able and consistent and seems to be in harmony with the
wishes of Mrs. Davis. Any other view enforces one or the
other of two doubtful constructions: either, first, that the prin-
cipal is intestate estate, or that a perpetual trust has been
created for the benefit of Mrs. Reed, either of which construc-
tion seems to be inconsistent with the letter and spirit of the
whole instrument. We think the letter falls within the
definition of a gift *causa mortis* as defined by this court in the
case of Roberts v. Droper, 18 App. Ct. 167. We there held
that "a gift *causa mortis* is defined to be a gift of personal
property made by one in expectation of death then imminent,
and upon an essential condition that the property shall belong
fully to the donee in case the donor dies as anticipated, leaving
the donee surviving him, and the gift is not in the meantime
revoked, but not otherwise." 2 Schouler on Personal Prop-
erty, Sec. 135. Blackstone defines it to be a gift by a person
in his last sickness apprehending his dissolution near. 2
Black. 514. And this view of the law seems to be in har-
mony with the very great weight of the authorities. Wyblee
v. McPeters, 52 Ind. 393; Baker v. Williams, 34 Ind. 547;
Bostwick v. Mehaffy, 46 Mich. 342; Virgin v. Gaither, 42
Ill. 39; Woodburn v. Woodburn, 123 Ill. 609; Seavy v. Seavy,
App. Ct., 2d District, opinion filed May 25, 1889.

This last case is very similar to the one at bar in its facts.
But if we should concede that the letter to Judge Barton only
directs that the interest on the gross sum shall be paid Mrs.
Reed, then one of two conclusions seems inevitable; either
that the donor meant that he should pay her but the amount

of interest in his hands at the time of the deposit of the gross proceeds of the certificate of deposit and notes, and that his agency or charge of the fund should then cease, or that his agency or management of the fund and payment of interest to Mrs. Reed should be without any limitation, and therefore perpetual. We have already seen that if we adopt the first construction then it results that the management, title and possession of the fund would go at once to Mrs. Reed. If we adopt the latter conclusion then the gift amounts to a perpetual use of the principal thing granted, without any limitation or restraining words, and therefore is equivalent to and in legal effect is a grant or gift of the money itself. If A grants or gives to B a piece of land to be used and enjoyed forever, that amounts to a gift of the land itself, although the use only is expressed, because the perpetual use is entirely inconsistent with any kind of right or title existing in any one else. So the gift of the perpetual use of a chattel necessarily carries with it the absolute ownership of the chattel, and for the same reason.

So here, if it be held that this letter confers on Mrs. Reed a perpetual right to have the interest on this money, then it is utterly impossible that any other person could ever take away the principal or any part of it for any purpose, for that would defeat the beneficial right of Mrs. Reed to enjoy the interest. For these reasons the law treats all such grants or gifts of the perpetual use of a thing as equivalent to a grant or gift of the thing itself. So, by adopting either construction of the paper we reach the same conclusion, that Mrs. Reed is the absolute owner of and entitled to the possession of this money.

While it may be conceded that the letter in question is not entirely free from all doubt and difficulty of construction it must also be remembered that the burden of establishing his claim to this property rests in the administrator, Barton, to show his right to it. It is not found in the possession of his intestate, and before he can get it he must show a clear right to it.

We think he fails in this. The most favorable attitude he

Reed v. Barnum.

can occupy under the proof in the case is that it is doubtful what the meaning of the letter is, and that the right as between him and Barton and Mrs. Reed is doubtful. His testatrix parted with the possession, and adverse possession considered alone, is strong presumptive evidence against the executor. In any view of the case we have been able to take we think the executor fails to establish any right to this property.

Whether Barton's duty and control over the fund is ended and that it is his duty to hand it over to Mrs. Reed, as we think it is, or whether he is a trustee in perpetuity or otherwise over the fund for the benefit of Mrs. Reed, can not concern the administrator. It is sufficient to defeat his bill that he fails to show any title or right to the fund.

Mrs. Reed makes her answer a cross-bill as well, and asks that Judge Barton be declared to hold said money and funds as her trustee, and that he be directed to execute and discharge his trust by delivering and paying over to her the certificates and notes described in said letter, or the proceeds thereof when collected. We think she is entitled to this relief and that the certificates and notes, or their proceeds, should be delivered to her as her own absolute property.

In decreeing as it did and in refusing to grant relief prayed for by Mrs. Reed the court erred. The decree of the Circuit Court will therefore be reversed and the cause remanded, with directions to dismiss the bill for want of equity, and to grant the relief prayed for by Mrs. Reed in her cross-bill, and direct Judge Barton to deliver her the notes and certificates if they have not been reduced to money, and if they have, then to pay her the money, less any reasonable charges against said fund which Judge Barton may be entitled to, if any, for his fees or charges for taking care of said fund. If he has used the said fund or any part of it, or received interest thereon from the bank or otherwise, then he will be chargeable with such use or interest at such rate as the court shall deem right and just.

*Reversed and remanded.*