EDWARD H. NEVITT *et al.*

*v.*

CHARLES H. WOODBURN *et al.*

*Opinion filed October 24, 1898.*

1. FREEHOLD—*when freehold is involved in suit.* A freehold, within the meaning of the statute, is involved only in cases where the necessary result of the judgment or decree is that one party gains and the other loses an estate in land, or where the title to the estate is so put in issue by the pleadings that the determination of the case necessarily involves a decision of that issue.

2. SAME—*bill to require trustee to account for proceeds of land does not involve a freehold.* A devise of real estate to a trustee, to be sold by him and the proceeds distributed to legatees, is a devise of money and not of land, and a bill to require the trustee and others acting with him to account for trust funds arising from the sale does not involve a freehold, though the bill seeks the appointment of a new trustee to whom the old trustee must convey the title.

APPEAL from the Circuit Court of Whiteside county; the Hon. JOHN G. GARVER, Judge, presiding.

JARVIS DINSMOOR, for appellants.

JOHN G. MANAHAN, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In this case a motion is made to dismiss the appeal for want of jurisdiction in this court. The appeal is taken directly from a decree entered by the circuit court; and it is claimed, that no freehold is involved, and that, therefore, the appeal should have been taken to the Appellate Court. We are of the opinion, that the bill filed in the court below was a bill filed against the trustee, and other parties acting for or with the trustee, for an accounting as to trust funds. The bill, being of the character thus indicated, involves no freehold; and the motion to dismiss must be allowed. The facts are somewhat complicated,

but enough of them will be stated to explain the conclusion here reached.

On June 19, 1872, one George W. Woodburn died at Sterling, Illinois, testate, leaving him surviving his widow, Phebe A. Woodburn, and an only child, James H. Woodburn, and two grandsons, George W. Woodburn, Jr., and Charles H. Woodburn, the latter being sons of the said James H. Woodburn. On April 6, 1890, said George W. Woodburn, Jr., died intestate, leaving him surviving his two children, May M. Woodburn and Beatrice L. Woodburn, who were respectively of the ages of ten and thirteen years at the time of filing the bill herein, and were great-grandchildren of the testator, George W. Woodburn, Sr.

The will of George W. Woodburn, Sr., contained the following provision: "I hereby will, direct and request, and by this my last will, do place in the hands of my executor, all my real estate, being the farm upon which I live, and do direct him to sell what may be necessary for the payment of my debts; also to sell an amount sufficient to raise a fund sufficient to pay of interest to my beloved wife, Phebe Ann Woodburn, $1000.00 per year, which amount shall be for her support during her lifetime, and at her death this fund shall go to my legal heirs, in the order below mentioned: that is, to my son James H. Woodburn if living, for his use during his lifetime, at his death to go to his children, and at their death, if childless, to go to and be divided among the families of my brother William H. Woodburn, John M. Woodburn and Jane E. Ege." The will also contained a provision, that the son, James H. Woodburn, might be a bidder at the sale to be made of the real estate to be sold for the purpose of raising the fund above mentioned, and that he should have the right to buy the real estate so to be sold by the executor for the purpose of creating the fund, and to secure the same by securities to be made to the executor. By the will, one Peter Ege, a nephew of the testator, was appointed executor, and qualified and took

upon himself the duties of the trust. On March 13, 1873, Peter Ege, the executor and trustee, for the purpose of creating the fund provided for in the will, sold the farm of the decedent at public auction; and it was struck off to James H. Woodburn for $15,150.00. James H. Woodburn sold the homestead and two and one-half acres of ground to the widow, Phebe A. Woodburn, for $2180.00, to secure which she executed her notes and a mortgage upon the property, so bought by her, directly to the executor, Peter Ege. The executor accepted the notes and mortgage of the widow, so secured, for $2180.00, as the payment of so much from James H. Woodburn on his purchase, and as a portion of said principal fund. James H. Woodburn executed to the executor his two notes of $2000.00 each, secured by mortgage upon the north half of the farm sold, and known as the "north mortgage," and also his two notes of $2376.50 each, secured by mortgage on the south part of the farm, and known in the record as the "south mortgage." The balance of the purchase money of $15,150.00, less said $2180.00, James H. Woodburn paid in cash. A certain sum of $753.00 was paid by said James H. Woodburn and credited upon one of the notes for $2000.00 each, leaving $3247.00 due upon said north mortgage. Thereupon, Peter Ege, as trustee under the will, set aside the notes of James H. Woodburn, aggregating $8000.00, and the notes of the widow, aggregating $2180.00, being $10,180.00 in all, together with the mortgages securing the same, to form the fund provided for by the will, the residue of the proceeds of the sale being applied to the payment of the decedent's debts and the expenses of administration.

Afterwards, certain proceedings were had, which resulted in the removal of the said Ege as trustee and executor. (*Woodburn* v. *Woodburn*, 23 Ill. App. 289; *Woodburn* v. *Woodburn*, 123 Ill. 608; *Nevitt* v. *Woodburn*, 160 id. 203). A certain note for $1100.00, given by one Peter Odenthal

and secured by mortgage, was also turned over by James H. Woodburn to the trustee as a part of the fund.

Litigation arose between the widow and Peter Ege and James H. Woodburn, as will be seen by reference to the cases above referred to. In the course of this litigation, the securities were taken by the court out of the hands of Ege, and given to one Sanborn who was appointed receiver. Afterwards, on April 6, 1883, the circuit court entered an order, appointing the appellant, Edward H. Nevitt, as trustee of the said funds under the will. In 1883 Nevitt and the receiver brought suit to foreclose the north mortgage for $3247.00 and interest, and obtained title to the land under the foreclosure; and afterwards, in 1888, Nevitt sold the lands embraced in said mortgage at public auction for $4155.00. Subsequently, Nevitt foreclosed the other mortgage above referred to, and, after decree of foreclosure was entered, James H. Woodburn adjusted said decree with Nevitt by giving a new note and mortgage on additional land, securing the same for the amount of principal and interest due on said south mortgage. Shortly thereafter Nevitt foreclosed said new mortgage against James H. Woodburn, and sold a portion of the land mortgaged at the foreclosure sale for about $1500.00 in cash, and bid in the remainder of the mortgaged premises for $6945.00, the balance of the debt, interest and costs.

The bill in the case at bar is filed by Charles H. Woodburn, son of James H. Woodburn, in his own right, and also as next friend of the minor children, May M. Woodburn and Beatrice L. Woodburn, against Edward H. Nevitt, James Dinsmoor, Jarvis Dinsmoor, James H. Woodburn and Phebe A. Woodburn, claiming to be the owners of the principal fund created under the will of George W. Woodburn, deceased, and charging that said fund has been wasted and squandered by the trustee, Edward H. Nevitt, and his attorneys, James Dinsmoor and

Jarvis Dinsmoor, and praying that they restore to said principal fund the amount of such depletion, and that an accounting be had of and concerning said trust fund, and for an injunction restraining the trustee and his attorneys from further wasting and squandering the fund. Default was entered against Phebe A. Woodburn. A plea and an answer were filed by Edward H. Nevitt. Answers were also filed by James and Jarvis Dinsmoor and by James H. Woodburn. A cross-bill was filed by the said Nevitt, which was answered by Phebe A. Woodburn, and demurred to by Charles H. and James H. Woodburn. The court on hearing of the demurrer dismissed the cross-bill.

The decree of the court upon the original bill found that the appellees, Charles H., May M. and Beatrice L. Woodburn, were the owners of the principal of the trust fund created by the will, and that the same had been depleted and squandered by the defendants to the bill, and that the appellees were entitled to an accounting and a restoration of the principal fund to its original amount. The cause was referred to a master in chancery, who made report and therein found a certain amount due. A final decree was rendered by the court, finding that the trustee, Nevitt, had failed to keep proper books of account; that said trustee had paid to the widow a sum in excess of said sum of $2180.00, which he should have retained and invested as a part of the principal fund; that he had unjustifiably paid to the firm of James and Jarvis Dinsmoor the sum of $1693.79, part of said trust fund. In its decree the court charged Nevitt with $8000.00, the principal of the James H. Woodburn notes; with $166.93 received from Sanborn, the receiver, and with $2180.00 wrongfully paid over by him to the said Phebe A. Woodburn, the whole amounting to the sum of $10,346.93. The decree allowed Nevitt credits to the amount of $4753.00, and left him indebted to the trust fund in the sum of $5593.93. The decree also removed Nevitt from the trusteeship, and required him to turn over to his successor the land, repre-

senting the portion of the trust fund originally secured by the south mortgage. By the decree it was ordered, that complainants recover of Edward H. Nevitt $5593.93, and of James and Jarvis Dinsmoor $1693.79, and the sum of $2180.00 from said widow, etc.

It is evident from the above recital of the facts and of the findings of the decree rendered by the court below, that no freehold is involved in this case. A freehold is involved, within the meaning of the statute, in cases wherein the necessary result of the judgment or the decree is, that one party gains and the other loses a freehold estate, or where the title to a freehold is so put in issue by the pleadings that the decision of the case necessarily involves the decision of that issue. (*Goodkind* v. *Bartlett*, 136 Ill. 18; *Sanford* v. *Kane*, 127 id. 591; *Malaer* v. *Hudgens*, 130 id. 225; *Ryan* v. *Sanford*, 133 id. 291). The title to land is in no way put in issue by the pleadings here. The primary object in the present suit is not the recovery of a freehold estate, nor is the decree one by which one of the parties gains and the other loses a freehold estate. (*Zinc Co.* v. *City of LaSalle*, 117 Ill. 411; *Chicago, Burlington and Quincy Railroad Co.* v. *Watson*, 105 id. 217). The trustee, Nevitt, and his attorneys had in their possession certain securities belonging to the trust fund, which they are alleged to have wasted and squandered. They are called upon to account for the amount so wasted and squandered, and to restore it to the trust fund. It is true, that, at a foreclosure sale against James H. Woodburn, the trustee bid in certain property and holds the title thereto. This property, however, he merely holds in trust, and, as it is a substitute for the note and mortgage, held by the trustee, which was foreclosed, the land, so held by the trustee, is regarded in equity as personalty or money in his hands. Nevitt does not claim to be the owner of the land, which he thus bid in at the foreclosure sale, but admits that he holds it in trust and as a part of the trust fund named in the will. To be sure, he is removed from

his trusteeship, and a new trustee is appointed by the decree, and he is ordered to convey the land, the title to which is in him, to his successor in trust. The decree, however, which thus orders him to convey the title, is not such an adjudication upon the title, as deprives him of the title and gives it to another person. The requirement, that he convey the title held by him is the result, not of an adjudication upon the title itself, but is the result of the finding that he had not faithfully performed the duties of the trust. The order to convey the title is merely a part of the finding, that there has been a breach of trust. It cannot be said, that Nevitt loses a freehold estate in any sense by the decree, ordering him to turn over the land to his successor.

Some question is made as to the ownership by the appellees of the principal of the trust fund. It is claimed on the part of the appellants, that the appellees have no such interest in the principal of said trust fund as authorizes them to file this bill. In disposing of the present motion to dismiss, we do not deem it necessary to consider the will, as above quoted, with a view of determining the nature of the interests, if any, which the parties hereto have in said fund. The will provides, that the farm shall be sold in order to raise a fund, which shall be for the support of the widow during her lifetime, etc. Where a will directs the executor or trustee to sell real estate for the purpose of creating a fund to be invested for the use of life tenants, the will is to be regarded as a devise of money or personalty and not of land. (*Glover* v. *Condell*, 163 Ill. 566; *Crerar* v. *Williams*, 145 id. 625). A devise of real estate to be converted into money, and distributed among devisees, is admitted to be a devise of money, and not of land. Land required by law to be reduced to money is regarded as personal property. (*Baker* v. *Copenbarger*, 15 Ill. 103; *Jennings* v. *Smith*, 29 id. 116). The principal fund here in controversy must, therefore, be regarded as personalty. Hence, the question, whether or not the

present appellees are the owners of the fund, makes no difference in the determination of the motion to dismiss, as the property is personal property, so that a freehold cannot be involved. A freehold has been defined to be "an estate in real property of inheritance, or for life, or the term by which it is held." (*Gage* v. *Scales*, 100 Ill. 218; *Ducker* v. *Wear & Boogher Dry Goods Co.* 145 id. 653).

Accordingly, an order will be entered dismissing the appeal.                                                    *Appeal dismissed.*