Nevitt v. Woodburn.

**Edward H. Nevitt, James Dinsmoor, Jarvis Dinsmoor, Impleaded with James H. Woodburn and Phebe A. Woodburn, v. Charles H. Woodburn, May McD. Woodburn, Beatrice L. Woodburn.**

82 649
s190s 284

1. POWERS—*Coupled with an Interest.*—A power coupled with an interest is where the power or authority is coupled with an interest in the thing itself, actually vested in the agent. It is not an interest in that which is produced by the exercise of the power.

2. WILLS—*What is a Devise of Personalty.*—Where a will directs the executor or trustee to sell real estate for the purpose of creating a fund to be invested for the use of life tenants, the will is to be regarded as a devise of personal property and not of real estate.

3. PERPETUITY—*Defined.*—A perpetuity in this State is defined to be a limitation taking the subject thereof out of commerce for a longer period than a life or lives in being and twenty-one years beyond.

4. SAME—*What is Void as Such.*—A devise to the children of W., but subject to the limitation that in case they die childless the fund shall go to the other persons named, is void as against the rule prohibiting perpetuities, and the title vests in the children of W.

5. PARTIES—*When a Ward is Not a Necessary Party.*—In a proceeding by a conservator to sell land for the support of his ward, the latter is not a necessary party, for the reason that the proceeding is not adverse to the ward but for his benefit.

6. SAME—*Not Before the Court—Not Bound by the Decree.*—It is a general rule, subject, however, to certain well recognized exceptions, that in proceedings in equity the interests of parties not before the court will not be bound by the decree.

7. SAME—*Exception to the Rule—The Doctrine of Representation.*— Among the exceptions to the rule that parties not before the court are not bound by the decree, is one growing out of convenience or necessity in the administration of justice, which has given rise to what is known as the doctrine of representation. So where it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon him.

8. SAME—*In Suits Concerning Trust Property.*—In suits respecting trust property, brought either by or against the trustees, the *cestuis que trust* (or beneficiaries) as well as the trustees are necessary parties.

9. TRUST FUNDS—*Power of Courts Over.*—Courts will not permit a trust fund to be dissipated by litigation not necessary for the protection of the fund itself without affording a remedy to the actual owners of such fund.

10. SAME—*Cestui Que Trust May Pursue the Proceeds.*—The *cestui que trust* may pursue the proceeds of trust property and charge with the original trust any property in which they may be invested as against all who have actual or presumptive notice of the trust.

11. TRUSTEES—*Duty to Keep the Fund Intact.*—It is the duty of the trustee to keep the fund which comes to his hands intact. If he fails to do this he should be charged with the amount of the depletion.

12. SAME—*After Removal Not Entitled to Have a Construction of the Will.*—After the removal of a trustee, as trustee of a fund, by the court, he is not entitled to have a construction of the will creating the trust unless it should appear that he has been improperly removed.

**Bill for Injunction and Other Relief.**—Trial in the Circuit Court of Whiteside County; the Hon. JOHN C. GARVER, Judge, presiding. Decree for complainants; error by defendants. Heard in this court at the December term, 1898. Affirmed in part and reversed in part with directions. Opinion filed May 19, 1899.

JARVIS DINSMOOR, attorney for plaintiff in error.

In the Woodburn will there is no devise of land, but only the proceeds of land. The doctrine of equitable conversion obtains, and equity must look upon this land as money. Baker v. Copenbarger et al., 15 Ill. 103; Jennings v. Smith et al., 29 Ill. 116; Rankin v. Rankin, 36 Ill. 293; In re Corrington, 124 Ill. 363; Ebey v. Adams, 135 Ill. 80; Crerar v. Williams, 145 Ill. 625; Glover v. Condell, 163 Ill. 566;

Banta v. Boyd, 118 Ill. 186; Davenport v. Kirkland, 156 Ill. 178.

A perpetuity in this State is defined to be a limitation taking the subject thereof out of commerce for a longer period of time than a life, or lives in being, and twenty-one years thereafter. Hale v. Hale, 125 Ill. 409; 3 Cruse Dig., Title 38, Ch. 9, Sec. 33; 18 Ency. of Law, 339.

"A limitation void because it offends against the doctrine of perpetuities will be void altogether, and can not be held, under the Cypress rule of construction, to be good as to that part which keeps within the period of perpetuity, and void only as to excess." Post v. Rhorback, 142 Ill. 600; Lawrence et al. v. Smith et al., 163 Ill. 149.

One can not empower a trustee to limit the estate beyond the limits of the rule against perpetuities. 1 Perry on Trusts, 470, Secs. 383 and 390; 2 Redfield, Wills, 573, Sec. 21 (2d Ed.).

"The doctrine of representation, as understood and administered by courts exercising chancery powers, recognizes the rule that all persons interested in property which is the subject of litigation, need not be made parties to the proceedings. All that is required is that a person should be present as a party who will act as 'the present owner and protector of the interest or right that is drawn into controversy. If the interest or right receives an effective protection from those who are parties, the proceeding takes place with as equal certainty of justice as if all persons consequentially or derivatively interested were joined." Clark v. Cordis et al., 4 Allen, 466; Cross v. DelValle, 1 Wall. (U. S.) 16; Mead v. Mitchell, 17 N. Y. 210; Regan v. West, 115 Ill. 609; Story Eq. Pl., Sec. 144; Knotts v. Stearns, 1 Otto (U. S.) 638; Adair v. The New River, etc., 11 Ves. 429.

Morrison & Bethea and C. H. Woodburn, attorneys for defendants in error.

Where a devise is made to one person for life, with remainder to his children, the remainder will vest in the children on the death of the testator. Schaefer v. Schaefer,

141 Ill. 337; Voris v. Sloan, 68 Ill. 588; Welsch v. Belleville Savings Bank, 94 Ill. 191; Nicoll v. Scott, 99 Ill. 529; Smith v. West, 103 Ill. 332; Cheney et al. v. Teese et al., 108 Ill. 474; Marvin v. Ledwith, 111 Ill. 144; Female Academy v. Sullivan, 116 Ill. 375; Railsback v. Lovejoy, 116 Ill. 442; Scofield v. Olcott, 120 Ill. 362; Ducker v. Burnham, 146 Ill. 9.

A trustee is bound to manage and employ the trust property for the benefit of the *cestui que trust* with the care and diligence of a provident owner. Hutchison v. Lord, 1 Wis. 249; Lewin on Trusts, 299; Pom. Eq. Jur. 1090.

Where one of several *cestuis* converts to his own use moneys belonging to the others the trustee may retain after-acquired income to make good the indebtedness thus created. Crocker v. Dillon, 133 Mass. 91.

A rise in the value of trust investments like rise in the value of lands held in trust, has always been regarded as an accretion of the principal and therefore belonging to the remainderman. Hubley's Est., 16 Phila. 327; Hill on Trustees, 175; Van Vleck v. Lounsberry, 34 Hun, 569; Mucge v. Parker, 139 Mass. 153; Parker v. Johnson, 37 N. J. Eq. 366; 2 Perry on Trusts, Sec. 546.

MR. JUSTICE HIGBEE delivered the opinion of the court.

An appeal was originally taken from the decree in this case directly to the Supreme Court, where a motion was made to dismiss the same for want of jurisdiction, on the ground that no freehold was involved. The court sustained the motion and dismissed the appeal. In passing upon the motion, a full and complete statement of the case was made by the court, to which we refer. (See Nevitt et al. v. Woodburn et al., 175 Ill. 376.) In the same connection we also refer to the statement of the case in Woodburn v. Woodburn, 123 Ill. 608. Phebe A. Woodburn, one of the defendants below, filed her motion in this court for leave to withdraw the cross-errors assigned for her, and the brief and argument filed in support thereof, by James Dinsmoor, who is a plaintiff in error. This motion is supported by her affidavit,

in which she states that "the said James Dinsmoor has appeared for her and filed said cross-errors and brief and argument without her knowledge or consent and against her whishes; that the said James Dinsmoor is not her attorney and has no authority to appear for her in any matter whatever; that any authority the said James Dinsmoor ever had to represent her was long since revoked by her." In further support of her motion said Phebe A. Woodburn filed a notice signed by her, purporting to have been served on said James Dinsmoor on November 28, 1896, in which she notifies him that he is no longer her attorney and forbids him to act as such thereafter. The motion concludes as follows: " And I hereby revoke any grant of authority or power of attorney heretofore made to you to act as my attorney or solicitor in my business, as fully and completely as though the same had not been given or granted to you." James Dinsmoor resists the motion, for the reason, as alleged in the affidavit filed for him, that on the 22d day of June, 1893, the said Phebe A. Woodburn was indebted to him in the sum of more than two hundred dollars, paid by him in her behalf upon a bond which he had signed with her as surety; that on the 27th day of June, 1893, in consideration of said indebtedness she executed to him a power of attorney, coupled with an interest, giving him authority to act for her in this suit; that said Phebe A. Woodburn had a pecuniary interest in the fund in litigation; that she has never paid his debt, and that therefore he is entitled to assign said cross errors and file a brief in support thereof, without regard to her wishes.

James H. Woodburn, also one of the defendants below, files his affidavit in which he states that since the giving of said power of attorney the said Phebe A. Woodburn has sold and transferred to him all her interest in said fund or estate and has now no interest therein.

If Mrs. Woodburn still has control of the suit so far as it concerns her, she unquestionably has a right to withdraw the assignment of errors and the brief and argument in support thereof filed for her. Her right to so control

her suit involves in the first place the question whether the power of attorney conferred upon Dinsmoor the authority to appear for her and assign errors in this cause, and if so the further question whether it had been legally revoked by Mrs. Woodburn. The power of attorney executed by Mrs. Woodburn recites the fact that there is a suit pending by James H. Woodburn and others; that she desires said litigation to be ended, that she may realize some immediate income or profit from the fund involved, and that she is indebted to James Dinsmoor in consequence of his having signed a certain appeal bond with her. By said power of attorney she therefore authorizes the said James Dinsmoor to effect a complete settlement of all the matters, suits and controversies existing between her, James H. Woodburn and others. She further authorizes him to settle, compromise and adjust her claim in and to the estate or fund in question, and to sign her name to any written agreement that may embody the terms of settlement between the parties interested in the fund and herself. While the power of attorney also authorizes said Dinsmoor to appeal in her name from all orders or judgments of the court made or to be made against her, yet we are of opinion that it was simply intended to, and did, authorize Dinsmoor to effect a settlement or compromise of the matters in controversy and did not empower him to assign errors for her in this case against her express desire. Nor do we think the power of attorney gave Dinsmoor such an interest in the fund in question that it could not be revoked. It only gave him the right to retain out of any money received by him in settlement of the matter in controversy an amount sufficient to liquidate said indebtedness to Mrs. Woodburn to him, and also "all other costs, fees and expenses incident to. the said settlement or compromise." No settlement or compromise was ever effected, and it does not appear that any was ever attempted. "A power coupled with an interest" is where the power or authority is coupled with an interest in the thing itself, actually vested in the agent. It is not an interest in that which is produced by the exercise

of the power. (Walker v. Denison, 86 Ill. 142.) The interest given to Dinsmoor was not a lien upon or interest in the fund itself, but only a right to reimburse himself and pay costs out of the proceeds of the collection made by him from settlement or compromise. The power could therefore be revoked by Mrs. Woodburn, and as she has exercised her right and revoked the power, her motion for leave to withdraw the cross-errors and the brief and argument filed for her, without her consent, will be sustained and the leave granted. The withdrawal of the cross-errors does not affect the principal questions presented by the record, and they will be considered in order.

First. The provision of the will of George W. Woodburn, Sr., with which this litigation is mainly concerned, is as follows:

" I hereby will, direct and request, and by this, my last will, do place in the hands of my executor all my real estate, being the farm upon which I live, and do direct him to sell what may be necessary for the payment of my debts; also to sell an amount sufficient to raise a fund sufficient to pay the interest to my beloved wife, Phebe Ann Woodburn, one thousand dollars per year, which amount shall be for her support during her lifetime, and, at her death, this fund shall go to my legal heirs, in the order below mentioned; that is, to my son James H. Woodburn, if living, for his use during his lifetime, at his death to go to his children, and at their death, if childless, to go to and be divided among the families of my brother William H. Woodburn, John M. Woodburn and Jane E. Ege."

It is insisted by counsel for plaintiffs in error that the limitation over, after the provision made for Phebe Ann Woodburn, is void, as contravening the doctrine of perpetuities, and that therefore the complainants in the original bill had no interest in the fund in question which entitled them to maintain their suit. It was held by the Supreme Court, when this case was before it (Nevitt v. Woodburn, 175 Ill. 376), that "where a will directs the executor or trustee to sell real estate for the purpose of creating a fund to be invested for the use of life tenants, the will is to be regarded as a devise of money or personalty, and not of

land," and that "the principal fund here in controversy must therefore be regarded as personalty." But in determining whether or not a limitation is void, as offending against the doctrine of perpetuities, the same rule applies to personalty as to real estate. "There are no remainders in personalty; all future limitations of personalty are executory limitations. But to determine whether they are vested, as that term is used with reference to questions of remoteness, the test to be applied is : would they be vested if they were legal limitations of realty?" (Gray on The Rule Against Perpetuities, Sec. 117, p. 71.) In Hale v. Hale, 125 Ill. 399, it is said "a perpetuity in this State is defined to be a limitation taking the subject thereof out of commerce for a longer period of time than a life or lives in being, and twenty-one years beyond."

It can not be denied that conditions might arise, under the provision of the will in question, which would suspend the right of alienation beyond the lives of those persons mentioned therein and for more than a period of twenty-one years thereafter.. We do not understand, however, that the whole provision of the will above mentioned is thereby rendered void, but only the limitation which violates the rule against perpetuities. In the case of Post v. Rohrback, 142 Ill. 600, the testator devised real estate to his daughter, subject to the limitation that if she should die without leaving a child or children, or if she should die leaving a child or children surviving her, and such child or children should die without leaving a child or children surviving them, or one of them, it should revert to such of the other children and descendants of deceased children of the testator as should then be living. It was there held that the limitation over was void because it might not have taken effect in possession within a life or lives in being and twenty-one years thereafter, and that therefore the daughter took the title in fee simple, free from all conditions.

It is provided by the will in question that at the death of Phebe A. Woodburn the fund shall go to the testator's son, "James H. Woodburn, if living, for his use during his

lifetime, at his death to go to his children and at their death, if childless," to go to other relatives of the testator. At the death of the testator, his wife Phebe A. Woodburn, his only son James H. Woodburn, and the two sons of the latter, George W., Jr., and Charles H. Woodburn, were all living. It will be observed that nothing is devised to the children of George W., Jr., and Charles H. Woodburn. The devise is simply to the children of James H. Woodburn, but subject to the limitation that, in case they die childless the fund shall go to the other persons named. We hold that this limitation is void as against the rule prohibiting perpetuities and that the title to the fund in question vested in George W., Jr., and Charles H. Woodburn, the two sons of James H. Woodburn, at the death of the testator, subject to the life interests of Phebe A. Woodburn and James H. Woodburn, as provided for by said will, and subject also to the possibility that the devise might be opened up upon the subsequent birth of children to James H. Woodburn, so·as to let them in to an interest in said fund. The complainants in the original bill were therefore the proper parties to bring suit for any impairment of the principal fund.

Second. Are the owners of the fund in question bound by the decrees and orders of court entered in the suit of Phebe A. Woodburn v. James H. Woodburn and others, brought in the Circuit Court of Whiteside County in 1880, which was taken by writ of error to the Appellate Court, and from there on appeal to the Supreme Court and reported in 123 Ill. 608? That suit was composed of several suits which were consolidated by an order of said Circuit Court at the March term, 1881, and included a bill in chancery, filed by Phebe A. Woodburn against Peter Ege, former trustee of the fund and executor of the estate, for an accounting and asking for his removal; a suit by James H. Woodburn against Phebe A. Woodburn and Peter Ege, for an injunction and to correct the description in a deed to certain premises purchased by Phebe A. Woodburn at the trustee's sale; a cross-bill by Phebe A. Woodburn to set aside an agreement in reference to her life interest in said

fund, formerly made between herself and James H. Woodburn, and two appeals by Peter Ege, executor, from the County Court, one in the case of an order to pay over to Mrs. Woodburn a certain sum found to be due from him, and the other in the case of a final report, made by him as executor.

George W. Woodburn, Jr., the father of the minor defendants in error, now deceased, but who was living when all the decrees and orders were entered in the consolidated suit, and defendant in error Charles H. Woodburn, were not parties to the suit at any stage of the proceedings. It is insisted however that they were represented by their father, James H. Woodburn, and that any decree or order binding upon him would also bind them, under the doctrine of representation. We have examined the cases cited by counsel for plaintiffs in error and are of opinion they do not support the position taken.

In Dodge v. Cole, 97 Ill. 338, it was held that in a proceeding by a conservator to sell land for the support of his ward, the latter was not a necessary party, for the reason that the proceeding was not adverse to the ward but for her benefit.

In Hale v. Hale, 146 Ill. 227, it was said:

" It is unquestionably a general rule, subject however to certain well recognized exceptions, that in proceedings in equity the interests of parties not before the court will not be bound by the decree. But among the exceptions is one growing out of convenience or necessity in the administration of justice, which has given rise to what is known as the doctrine of representation. Thus, where it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon him."

It was, however, further said in the same case, " It is not disputed that all persons *in esse* who have any possible interest in the estate were before the court," and the court held that the possible interests of persons not then *in esse*, which were identical with the interests of the defendants before the court, would be bound by the decree.

Story in his Equity Pleadings, Sec. 144, says, in speaking of the doctrine of representàtion :

" Upon similar grounds of a virtual representation of all the proper interests, where there is real estate in contro-versy which is subject to an entail, it is generally sufficient (all the parties having antecedent estates being before the court) to make the first tenant in tail *in esse*, in whom an estate of inheritance is vested, a party with those claiming the prior interests, without making any persons parties who may claim in remainder or reversion after such vested estate of inheritance."

The other authorities cited by plaintiffs in error are simi-lar in effect to the above, or are based upon cases which were governed by special laws of the several States in which they arose. None of the authorities cited however apply strictly to the case before us.

The title to the fund in controversy here was vested in George W., Jr., and Charles H. Woodburn, both of whom were living at the death of the testator. There was no reason why they could not have been made parties to the suits, and no occasion for them to be represented by other persons. In the opinion filed in the consolidated case in the Appellate Court, Woodburn v. Woodburn, 23 Ill. App. 289, it is said, " It will readily be perceived there are other per-sons having an interest in this fund who were not before the court in these chancery proceedings, and it was error in the court to confiscate their rights and equities and turn over a part of the principal of the fund to the first life ten-ant." The general rule is that in suits respecting trust property, brought either by or against the trustees, *cestuis que trust* (or beneficiaries), as well as the trustees are neces-sary parties. Story's Equity Pleadings, Sec. 207; Scanlan v. Cobb, 85 Ill. 296.

In Butler v. Butler, 164 Ill. 171, which was a case where a trust fund was created by will and trustees appointed, with directions to invest the fund and pay the income there-from to the testator's son for life, and at his death to his widow and children, under certain limitations, it was held, that the son's wife and children " were *cestuis que trust* in the fund created by the will, and therefore necessary parties

to the chancery proceedings wherein the trustees named in the bill were removed and a new trustee appointed in their place;" that "said wife and children not being parties, the appointment made was invalid as to them, and gave to the trustee appointed no authority to make any contract, or do any act that would be binding upon their reversionary rights and interests."

It follows from what is above said that George W., Jr., and Charles H. Woodburn, being *cestuis que trust* in the fund created by the will of George W. Woodburn, Sr., could not be bound by the decrees and orders entered in the consolidated suit, or any other suit to which they were not parties, and that the trustee appointed in the consolidated suit had no authority to do any act which would be binding upon their rights and interests.

Third. Has the principal fund been unlawfully depleted, and if so, to what extent ?

The original fund set aside by Peter Ege to constitute the trust fund contemplated by the will, amounted to $10,180. It consisted of the notes of the widow, Phebe A. Woodburn, amounting to $2,180, secured by a mortgage on the homestead and two and one-half acres of ground, and the notes of James H. Woodburn for $8,000, secured by mortgages on the balance of the real estate sold by Ege as directed by the will. The mortgages of James H. Woodburn consisted of what were known as the "north mortgage," which secured notes to the amount of $3,247, and the "south mortgage," which secured notes to the amount of $4,753. A note for $1,100, given by one Peter Odenthal and secured by mortgage, was also afterward turned over to the trustee by James H. Woodburn. The Odenthal note and mortgage were originally given to the trustee as collateral security for the release of certain lands included in the mortgages of James H. Woodburn. Subsequently, however, it appears to have been regarded by both the trustee and James H. Woodburn as a part of the trust fund. The fund in the hands of Ege therefore amounted to the sum of $11,280. But whatever the amount of the original fund,

plaintiff in error, Edward H. Nevitt, who was appointed trustee of the fund to succeed Ege, on April 5, 1883, should only be charged with the several sums belonging to the same, which have come to his hands. Early in the progress of the litigation above referred to one W. A. Sanborn was appointed receiver of the fund in question. While he was so acting the Odenthal mortgage was foreclosed. What became of the proceeds of this mortgage does not satisfactorily appear. It does appear, however, that of the amount received from such foreclosure the sum of $166.93 was paid Nevitt, and the receipt thereof acknowledged by him. Nevitt also received a $2,000 note secured by the "north mortgage," the receiver for the time being retaining the other note for $1,247. Afterward the receiver and Nevitt joined in the foreclosure of the mortgage securing the two notes. At the foreclosure sale Nevitt bid in the premises for the debt and costs and thereafter controlled the whole fund. After the period of redemption had expired, Nevitt sold all the property included in the "north mortgage" for $4,155, which was more than the whole of the principal fund secured by such mortgage, and he charges himself with having received that amount in notes and cash in 1888. He had received the two notes secured by the south mortgage, amounting to $4,753, shortly after his appointment, as shown by his receipt, dated April 20, 1883. The whole of the fund originally secured by the notes and mortgages of James H. Woodburn, amounting $8,000, therefore, came to the hands of the trustee Nevitt intact.

By a decree of the Circuit Court, entered May 19, 1888, in conformity with the decision of the Supreme Court in the said consolidated case, it was ordered "that said Phebe A. Woodburn return to the trustee of said fund the said note and mortgage for $2,180, which the Appellate and Supreme Courts have found were erroneously delivered to her under a previous order of this court, and that in default of her restoring the same she be charged therewith in the account hereafter to be taken under the direction of this court as to the amount due her from said trustee."

It does not appear that this note and mortgage were ever returned to the trustee, and the question is whether the trustee had in his hands at the time said order was made, or has since received moneys belonging to her, and if so, what amount. From the proceeds of the sale of the "north mortgage" there was received by Nevitt, on September 4, 1888, the sum of $4,155. Charging him with $3,247, the amount of the principal fund secured by that mortgage, there still remained the sum of $908 belonging to Mrs. Woodburn, which should have been applied to the payment of her debt to the principal fund. In February, 1891, Nevitt obtained a decree foreclosing the "south mortgage." A portion of these lands were sold at the foreclosure sale for $1,501.25 in cash, and the remainder bid in by the trustee for the balance of the debt and costs, amounting to $6,945. On April 14, 1891, the master in chancery paid to the firm of J. & J. Dinsmoor, composed of the plaintiffs in error, James and Jarvis Dinsmoor, solicitors for the trustee, $1,051.01, derived from said sale, the balance of the $1,501.25 having been consumed in costs and commissions.

In his report filed October 22, 1889, the trustee charges himself with $168 received for rent of lands for 1888, which would be part of the income going to Mrs. Woodburn. From a careful examination of the record we are unable to discover any other moneys received by the trustee from the trust fund. Adding together the $1,051.01 received from the sale of a portion of the lands secured by the "south mortgage," the $908 excess from the "north mortgage," and the $168 received for rent, and we have the sum of $2,127.01, which is less than the amount the trustee credits himself with having paid Mrs. Woodburn since the decree of 1888. This amount he should have retained to be applied upon the indebtedness of Mrs. Woodburn to the trust fund, and not having done so he must be charged with it. While the remainder of the lands in the "south mortgage" were bid in for more than the amount of the principal fund secured by them, yet it is not certain as to what they are really worth, and they must be taken into account for only the amount for which they stand good to the fund.

We therefore hold that the trustee, Nevitt, must be charged with the principal of the James H. Woodburn notes amounting to $8,000, with $166.93 received by him from the receiver, Sanborn, and with $2,127.01 which was wrongfully paid by him to Phebe A. Woodburn, aggregating the sum of $10,293.94. Of this fund there is now in the hands of the trustee, as shown by the evidence, only that portion which is represented by the lands purchased by him at the foreclosure sale of the premises included in the "south mortgage," which we have found to be $4,753. All the rest appears to have been exhausted by court costs, solicitor's fees, expenses attending the trust and the payment of certain amounts to Phebe A. Woodburn.

It is contended that Nevitt should have credit for certain of the payments so made by him on the ground that they were necessary for the protection of the principal fund. The record however does not show a state of facts supporting this claim. The litigation referred to has been mainly carried on by and between the two life tenants and the trustees, with occasional suits for the foreclosure of the mortgages securing the fund. At no time was it necessary to bring a suit to protect the principal fund. If no suits had ever been brought the principal fund would, in all probability, so far as shown by the evidence, have still been intact. Courts will not permit a trust fund to be dissipated by litigation not necessary for the protection of the fund itself without affording a remedy to the actual owners of the fund.

It is said the will provided that Phebe A. Woodburn should be protected in her rights thereunder and that therefore the principal fund should bear the expense of the litigation with which she was connected. The will contained the following provision on that subject:

"It is my will that the said Phebe Ann Woodburn shall be fully protected in all her rights as given and directed in this will, and I charge my executor to see that my will is fully carried out; and direct him to defend her in all suits at law that may arise from this property."

But up to the time when the litigation commenced, the

interest on the fund was substantially paid. All the disasters which befell the principal fund and the income thereof seem to have largely resulted from unnecessary litigation instituted by her. Under such circumstances it would be manifestly improper to charge the costs and expenses so incurred by her against the principal fund.

It was the duty of the trustee to keep the fund which came to his hands intact. This he failed to do, and he should therefore be charged with the amount of the depletion. This amount we find to be the sum of $5,540.94 instead of $5,593.93 as fixed by the decree of the court below.

Fourth. The court below decreed that the complainants recover of James and Jarvis Dinsmoor the sum of $1,693.79, and that so much of said amount as should be collected from them, be credited to the trustee, Nevitt, in reduction of the amount found due from him. Error is assigned upon this provision of the decree by the Dinsmoors.

It appears from the evidence that the trustee paid the Dinsmoors $606.28 in 1888, and that he afterward paid them $108.50, making $714.78, all of which seems to have been for fees, except $10 advanced by them for costs. In the argument, filed by them in this case, they admit the receipt of the above sum, and that it was paid to them out of the principal fund. It further appears from the evidence, and is also admitted by them, that from the $1,051.01 paid by the master in chancery to the trustee April 14, 1891, the latter paid to the Dinsmoors $979.01 upon the order of Mrs. Woodburn, for the principal and interest of a note they held against her. This money however did not belong to Mrs. Woodburn for her own general use and should have been retained by the trustee to use in the repayment of the amount she owed the principal fund. She was not authorized to devote it to the payment of her other debts, and it must therefore be considered as having been paid to the Dinsmoors from the principal fund. This sum and the $714.78 above referred to, together, make $1,693.79 which is the amount charged against them in the decree of the court below.

They were entirely familiar with the provisions of the will and the condition of the fund, James Dinsmoor having been connected with the litigation from its inception, and Jarvis Dinsmoor for nearly the same time. Both of them appeared for Mrs Woodburn in the consolidated case in the Supreme Court and were, of course, thoroughly conversant with the decision and opinion in the case, and also with the decree subsequently entered by the Circuit Court in accordance therewith. They likewise knew the parties interested in the trust fund and that the persons in whom the title to the same was vested were not parties to the litigation. They must therefore be charged with knowledge of the fact that it was the duty of the trustee both to keep the principal fund in his hands intact, and to retain out of the moneys going to Mrs. Woodburn a sufficient amount to return to the fund what she had taken from it.

"No doctrine is better settled than that the *cestui que trust* may pursue the proceeds of trust property, and charge with the original trust any property in which they may be invested, as against all who have actual or presumptive notice of the trust." Breit v. Yeaton, 101 Ill. 242; Story's Eq. Jur., Sec. 1255, *et seq.*

Had the trustee conveyed the real estate securing the fund to which he received title through the foreclosure suits to the Dinsmoors there can be no doubt but that they would have taken the same charged with the trust. The fact that the portion of the fund received by them consisted of money rather than of land, does not relieve it of its trust character, and they therefore took it subject to the trust.

But while as between the defendants in error and the Dinsmoors the latter must account for that part of the trust fund which came to their hands, yet we are of the opinion that the portion of the decree which directed that so much of said amount as should be collected from them be credited to Nevitt in reduction of the amount found due from him, was erroneous. The decree should have been against Nevitt for the whole amount of the shortage, with a provision for crediting him with such sum as should be col-

lected from Phebe A. Woodburn, as hereinafter mentioned. It should have further provided that in case such deficit could not be collected from Nevitt, with such credits as he should be entitled to for moneys received from Mrs. Woodburn, the balance, not exceeding the amount of $1,693.79, should be recovered from James Dinsmoor and Jarvis Dinsmoor.

Fifth. As the decree of the Circuit Court, entered in 1888 in compliance with the decision of the Supreme Court, directed that the said Phebe A. Woodburn return to the trustee of the fund her said note and mortgage for $2,180, and as it appears from the evidence that she has never so returned the same, we are of opinion that the portion of the decree in this case which authorized the complainants to have and recover of her the said sum of $2,180, and that the same when collected should be credited to the trustee Nevitt, in reduction of the amount found due against him, was correct, and should be sustained.

Sixth. On September 4, 1893, plaintiff in error, Nevitt, filed a cross-bill asking for the construction of the will of George W. Woodburn, Sr., deceased, for his benefit as trustee of the fund therein provided for. A demurrer was interposed which was sustained by the court and the cross-bill dismissed. Afterward, on June 8, 1896, said Nevitt filed another cross-bill for a like purpose, which upon hearing was dismissed for want of equity. The action of the court in dismissing these cross-bills is assigned as error. As the court by its decree removed Nevitt as trustee of the fund in question, he was not in any event entitled to have a construction of the will, unless it should appear that he was improperly removed. It is urged that the court erred in removing Nevitt as such trustee, but upon an examination of the record we find the court was fully warranted in decreeing his removal. As Nevitt's relation to the fund was terminated by the decree, there was no reason why he should have been given a construction of the will, and the cross-bills were properly dismissed.

The decree of the court below is therefore reversed in

the respects wherein we have held that it is incorrect; in all other respects it is affirmed, and the cause is remanded with directions to so modify the decree as to conform to the the views expressed in the foregoing opinion. The costs of this court will be adjudged against plaintiffs in error.

Affirmed in part, reversed in part, and remanded with directions.

MR. JUSTICE CRABTREE, having entered an interlocutory decree in this cause, took no part in its consideration here.