## 538   APPELLATE COURTS OF ILLINOIS.

# Margaret Casey et al. v. Thomas Canavan et al., Trustees, etc.

1. FREEHOLD—*Not Involved in a Suit to Determine Whether Trustees Have Power to Sell Real Estate.*—Where a testator conveyed real estate by will to three trustees, who accepted the trust and executed it in part, and afterward one of them resigned his trust to the County Court, and that court accepted the resignation, and afterward the three trustees advertised for bids for the sale of the real estate, and the trustee who had previously resigned refused to accept the highest bid, and urged it should not be accepted, and the two trustees accepted the bid and entered into contract with the bidder, *held*, that a bill filed by the two trustees to determine whether the resignation of the third trustee was effective, whether the trustees had power to sell the real estate, and whether they should carry out the contract with the bidder, and for directions in the execution of the trust, did not involve a freehold.

2. CHANCERY PRACTICE—*Where a Bill States a Cause in Equity.*—Such a bill, to which the third trustee, the bidder, and all the beneficiaries of the trust are parties, states a cause in equity.

3. TRUSTEES—*When the Duty to Sell Real Estate Arises.*—A power in trustees to sell real estate conveyed to them, arises where, though no such power is expressly granted, the duties imposed can not be performed without making a sale.

4. SAME—*No Right to Permit One of Three to Act.*—Where three trustees are charged with the duty of selling real estate and distributing the proceeds in stated proportions, they have no right to permit one of the trustees to alone receive certain shares and distribute them.

5. SAME—*When a Court of Equity Will Order a Re-Sale of Real Estate.*—A court of equity will not order trustees to re-sell real estate where no reasonable grounds appear for expecting a bid substantially higher than that already accepted.

6. WILLS—*Construction of a Particular Devise.*—Where a testator directed a certain son might lease all his lands at $900 per year till the period fixed for a sale thereof, and the son did so lease and occupy them, and after the period fixed, litigation delayed the completion of a contract of sale, *held*, not error for the court to permit the trustees to continue the son's tenancy for another year at the same rate, where the showing upon which the order was made is not preserved, and the parties in interest were in court and did not object till near the middle of the rental year.

**Bill to Construe a Will.**—Appeal from the Circuit Court of Kankakee County; the Hon. JOHN SMALL, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed February 13, 1901.

W. R. Hunter, attorney for appellants.

Simeon Straus and Charles B. Campbell, attorneys for appellees.

Mr. Justice Dibell delivered the opinion of the court.

James and Thomas Canavan, two of the three trustees under the will of Anthony Canavan, deceased (who were also residuary beneficiaries under said will), filed a bill in equity against William W. Parish, Jr., the third trustee, and against the other residuary beneficiaries, seeking a construction of the will, a determination whether Parish was still trustee, and the direction of the court in the execution of the trust. All the defendants answered except Anthony Canavan, a son of deceased, whose residence was unknown, and he was served by publication and defaulted. There was a hearing and a decree. Catherine Parish, Margaret E. Casey and Nellie Bowe, three of the ten residuary beneficiaries, and Parish, prosecute this appeal from the decree.

Anthony Canavan died in Kankakee county, March 6, 1890, leaving a last will, which was duly probated. He appointed his sons, James and John, and his son-in-law, Parish, and the survivors or survivor of them, executors and trustees, and conveyed to them all his real and personal estate in trust. He directed the payment of his debts, and of certain legacies and annuities, and of sums to his wife for her support during life. The will directed that said trustees " have full power to, and do, in their discretion, lease, sell, convey, repair or mortgage, such part or parts of said property, on such terms and for such prices as they may see fit, and the moneys derived therefrom, and the net income in their hands, to invest in the repair or erection of buildings on any real estate held by them as aforesaid, or in interest-bearing securities or stocks." It directed that on the death of testator's wife the trustees should divide the rest and residue of his estate, and the accumulations and additions thereto, into thirty equal shares, and provided for the unequal distribution of twenty-seven of these shares,

among nine of his children. It directed that the remaining three shares should be held and retained by the trustees, the survivors and survivor of them, " to invest and reinvest the same, and pay over the income derived therefrom at such times and in such sums as they may in their discretion see fit, to my son Anthony, and on the decease of my said son Anthony leaving issue him surviving, to pay said shares to said issue; but in case of his decease without issue, or of his failure to claim his income within five years after the death of my said wife, to distribute said shares among my children." The will further provided that if Thomas desired to lease testator's farms, the trustees might lease all testator's real estate to him during the life of testator's wife at an annual rental of $900. It concluded with these words :

"On the final distribution of my estate I desire that my children should be given the preference as purchasers of my real estate."

The executors took out letters testamentary and closed the administration proper, of the estate. Parish filed in the County Court a written resignation of his trusteeship under said will, and that court entered an order May 2, 1898, accepting said resignation and discharging him from the further duties of said trust. For some time thereafter he did not act as trustee. On May 5, 1899, the widow of testator died. Afterward Parish joined the other trustees in preparing and publishing for four weeks in two newspapers of general circulation in Kankakee county, where the lands were situated, a notice calling for sealed bids for all or any part of the lands left by deceased. The lands (about $482\frac{1}{2}$ acres) were particularly described in the notice, and the terms of sale stated, and a date fixed by which the bids must be in. At that date two sealed bids for all the lands were received and opened by the three trustees, and that of Austin A. Canavan, a son of deceased, was found to be the highest by $850. Parish opposed accepting this bid and procured a delay, and at a later date attempted to make a higher verbal bid for the absent daughters. A controversy arose between Parish and the other trustees.

After several meetings complainants entered into written contract with Austin for the sale of the land to him, and he paid down ten per cent of his bid as required by the notice, and complainants filed this bill. The decree sustained the contract with Austin, and held Parish still a trustee.

Appellees have moved to dismiss the appeal on the ground that a freehold is involved, because by the decree the trustees who now have the title are directed to convey it to Austin upon his paying the balance of his bid, and because a decision that Parish is or is not trustee determines that he does or does not hold title in fee. No party to this record is in a position to argue that the action of the County Court relieved Parish of his duties or title as trustee. The bill charged that the order of the County Court was void and Parish still trustee. The answers of appellants expressly admitted this, and the other answers admitted generally all the allegations of the bill. But if the question whether Parish is still trustee were raised it would not involve a freehold. A decree removing a trustee of real estate, appointing a successor, and directing the former to convey the trust estate to the latter, was held in Nevitt v. Woodburn, 175 Ill. 376, not to involve a freehold, as it is not an adjudication upon the title to the land. Further, we think it clear the will gives the trustees power and directions to sell and convey the real estate and divide the proceeds. An express power is given them to sell and convey real estate during the wife's lifetime at their discretion. At her death the trustees are to divide the estate into thirty shares, and to "distribute" twenty-seven shares in certain proportions among certain children. The word "distribute" does not aptly apply to the partition and conveyance of real estate, but does apply properly to a division of moneys or securities. In the final distribution testator's children are to be "given the preference as purchasers of my real estate." This implies the real estate is to be sold by some one, and by necessary implication that must be done by those upon whom the testator imposed the title to the realty

and the duty of distributing the estate. Under certain contingencies the trustees are "to invest and re-invest" three shares, and under other contingencies are to "pay" them to the issue of testator's son Anthony. These words imply the land is previously to be turned into money. A power to sell arises by implication where, though no such power is expressly granted, yet the duties imposed can not be performed without making a sale. (Stoff v. McGinn, 178 Ill. 46.) This will, therefore, devises the real estate to the trustees, with power to sell at their discretion before the period of final distribution, and with directions to sell at that time, and distribute the proceeds. This is treated in equity as a devise of money and not of land. (Baker v. Copenbarger, 15 Ill. 103; Glover v. Condell, 163 Ill. 566.) Again, no pleading in the case claims the land should be partitioned among the children. The pleadings and briefs concede a sale must be made. The real question is not whether the trustees shall retain or part with the title, but how and to whom and for what sum the sale shall be made. The freehold is to be sold in any event. Therefore a freehold is not involved. (Nevitt v. Woodburn, *supra*, and cases there cited.) The motion to dismiss the appeal is therefore denied.

Appellants argue a case in equity is not stated. Their answers do not question the jurisdiction of the court. They submitted to the court the case made by the pleadings, unless the court was wholly incompetent to grant the relief sought by the bill. (Kaufman v. Wiener, 169 Ill. 596; Kelly v. Galbraith, 186 Ill. 593.) Complainants needed a construction of the will to determine whether they had a power of sale, and if so, and if their sale to Austin was a proper one, they needed the aid of the court to compel Parish to join in the deed to Austin, or to provide for the execution of the deed in his behalf by some one to be appointed by the court, for with Parish still trustee, and refusing to act, the complainants had no other way of giving to the purchaser the deed to which he would be entitled; and if the sale to Austin ought not to be consummated they needed the direc-

tion of a court of equity as to their further proceedings, and such was the prayer of the amendment to the bill. The answer of Mrs. Casey, Mrs. Parish and Mrs. Bowe, shows they claim complainants were not acting in good faith in selling to Austin. Complainants had a right to have these questions determined, and their powers defined, and directions given, in a proceeding where all the trustees and the beneficiaries, and the purchaser whose bid they had undertaken to accept, would be bound, while the title to the land was still in their control, instead of waiting the attack of the beneficiaries after the land had been conveyed and paid for. A court of equity is the only tribunal to which trustees can resort in such a case.

The published notice called for sealed bids for all or any part of the several tracts. The terms were ten per cent down upon the acceptance of the bid, and the balance upon delivery of the deed. Austin A. Canavan put in a bid valuing each tract separately, and offering for the whole $26,850. This was the highest bid. The appellants knew of the notice, and had the same opportunity he had to bid for all or any part of the lands. They did not choose to make a bid for all or any part of them. After the bids were made public, Parish objected to accepting Austin's offer on the ground that certain men he named would give more. To oblige Parish, complainants consented to adjourn to a date nine or ten days later. When that time arrived Parish had no bid from any one. He then proposed to Austin to let the daughters have about half the land at his bid. Austin refused. Parish then made a verbal offer of $27,350 from the four daughters, Mrs. Casey, Mrs. Parish, Mrs. Bowe and Mrs. McNulty. He attached various conditions as to discount from that bid, etc., which made it a matter of dispute between them whether this was much better than Austin's bid. He did not deposit or offer to deposit ten per cent as required by the notice. He could produce no written authority to make the bid and bind the daughters. He demanded as a part of the offer that the fourteen-thirtieths which would be payable to said four daughters in the dis-

tribution be paid exclusively to him, and be by him alone
distributed.   If he had asked that they be credited on their
bid, if accepted, for their shares of the consideration, this
would not have been unreasonable, as complainants agreed
to allow Austin to be so credited for his one share.   But
Parish's demand was that these fourteen shares be paid to
him.   He had nothing to show that the daughters had con-
sented he alone should handle and distribute their shares.
The other trustees had no power thus to relieve themselves
of their duty to make distribution.   Complainants con-
sented to wait a certain number of days for Parish to sub-
mit a written bid from said daughters.   The preponderance
of the evidence is that he then said he should not submit a
written bid from them unless complainants agreed in ad-
vance that they would accept it and unless Austin also
agreed he would not then overbid them.   After this meet-
ing Austin notified complainants he should withdraw his
bid unless they accepted it, and to prevent the loss of the
bid they accepted it and entered into contract with him,
before the date to which they had agreed to wait for Parish
to procure a written bid from the daughters.   Of this appel-
lants might complain if they had intended to submit a bid,
and had had a bid ready to submit at the date fixed.   But
on the day this bill was filed, (and Parish's cross-examina-
tion clearly shows, before he knew the bill had been filed,)
Parish wrote a letter to Austin, (not to the trustees,) in
which he said he would not be able to get the bid in time
to present it at the date fixed, and added, " but I can't see
what object it will be to be there with it unless you intend
to accept the same.   Notify if you do."   This meant Aus-
tin must consent, and not attempt to bid higher.   It is in
proof that Parish had previously told Austin that he would
never agree to anything in this matter which the other
trustees would agree to.   We think it a reasonable con-
clusion from all the evidence, as read in the record, that
Parish did not intend to submit a bid by the four daughters
to be performed by them, but that he only designed to pre-
vent a sale to Austin.   At the trial, appellants offered in

evidence a written bid signed by three of said four daughters, Mrs. Parish not joining therein. When Parish received it, does not appear; but he did not submit it to his co-trustees. When offered in evidence it was evidently not designed as a present offer, for Mrs. McNulty had answered by a different solicitor, in which answer she expressly withdrew everything she had done which could be construed as a bid for the lands, alone or with others, and admitted generally the allegations of the bill, one of which was that in the judgment of complainants the price bid by Austin was the full, fair cash value of said real estate, and that no better price could be obtained. All the residuary beneficiaries except Mrs. Parish, Mrs. Casey and Mrs. Bowe, by answer, admitted the material allegations of the bill. During the trial the solicitor for Mrs. Casey, Mrs. Parish and Mrs. Bowe submitted a written bid of $27,350 for a good merchantable title, free of all incumbrances, and offered to deposit with the clerk of the court a certificate of deposit for that sum, or the cash, if the trustees would deposit a deed; with the right reserved by said bidders to withdraw the offer and money if the abstract did not show a good merchantable title.

We think it manifest that neither the court nor the trustees could justly accept any of these open bids after the sealed bids had been made public. Sealed bids had been solicited for all or any part of the lands. The advertisement had been widely published in the county, and for an adequate period. There is no claim appellants were not fully advised thereof and did not have ample opportunity to bid, either for all or any part of the lands, if they wished or intended to do so. In sealed bidding, each person bids what he thinks he can fairly afford to give, and is willing to give, for the property. It is the essence of open bidding that it be competitive; that each party have an equal chance to bid. The course proposed by Mrs. Parish, Mrs. Casey and Mrs. Bowe at the trial was, that, having obtained the benefit of Austin's views of the value of the land, as manifested by his sealed bid, the court should now exclude

him from the bidding, and at once compel the trustees to
deposit with the clerk of the court a deed to them.    This
would certainly have been most unjust to Austin.    It is
also noticeable that they did not propose even then to bind
themselves absolutely, but reserved the right to withdraw
their offer and money if they thereafter decided the title
was not merchantable.    The only debatable question is
whether, under the proofs, the court should have set aside
the contract with Austin and directed the trustees to again
offer the lands for sale.    The written offer of Mrs. Parish,
Mrs. Casey and Mrs. Bowe, just referred to, did not tend to
require the court to order a re-sale.    Their offer was based
upon an immediate deposit with the clerk of the court of a
deed from the trustees to themselves.    They made no offer
to bid $27,350 at a future open sale.    They did not propose
to indemnify the trustees or the beneficiaries against the
danger that at a future sale the property might not bring
even the amount of Austin's bid.    When this offer was
made in open court the parties making it knew full well
that the trustees would not and could not accept it, with
Austin's contract outstanding and ten per cent of his bid
in the hands of the trustees.    We think, therefore, that this
restricted offer by said three beneficiaries to pay $500 more
than Austin's contract for an immediate deed to them is
not entitled to be considered in determining whether the
court ought to have set aside the deed to Austin and
directed the trustees to advertise again.    That question
must be determined from the proofs.    So far as appears
from the proofs the complainants acted in a fair and impar-
tial manner in advertising for and receiving bids and in
accepting the bid of Austin, and used reasonable discretion
and were governed by proper motives, notwithstanding a
contrary allegation in one of the answers.    Austin's bid
and conduct also is not subject to criticism.

Considerable proof was heard on the subject of value.
Part of the lands were low, wet and unbroken.    The wit-
nesses varied in their estimates of the values of the several
tracts.    The lowest price fixed by any witness would make

it $23,950, and the highest $28,950.  The chancellor heard these witnesses in open court, and could best judge of the value of their testimony.  Appellants complain that complainants were allowed to put in proof of value in rebuttal. Even if the burden was on complainants to prove the value of the lands in their case in chief, which may well be doubted, still we do not think the chancellor's discretion was abused.  Appellants did not offer further proof on the subject or ask time to procure it.  We are of opinion the preponderance of the proof is that Austin's bid was all the land was worth.  It was $450 more than an average of the estimates of the witnesses.  All the beneficiaries but three are satisfied with it.  We find nothing in this record giving any assurance that if Austin were released the lands would bring more at another sale, and without reasonable grounds appearing for expecting a substantially larger bid neither the court nor the trustees would be warranted in releasing Austin from his contract.  Properly advertising and making another sale would cause additional costs, and perhaps lead to new complications.  The testator intended the discretion of the trustees whom he named should determine for what amount a sale should be made, except that his children were to be given the preference as purchasers.  The majority of the trustees have decided this sale has brought all the lands were reasonably worth, and the sale is to one of the children.  We therefore approve the decree sustaining the contract with Austin.  We also approve the conclusion of the court that Parish is still trustee, both because no pleading questions it, and also because we are of opinion the County Court had no power or jurisdiction to relieve him of the trust imposed upon him by the will.

On February 24, 1900, it appearing that the completion of any sale was likely to be deferred some time by the pendency of this suit, complainants filed a petition in this cause, representing that the land ought to be kept under cultivation for the preservation of its present state of improvement and for the revenue it should yield, and that while this suit was pending, and the duration of any ten-

ancy the trustees might create uncertain, the trustees could not lease the land to any one without an order. They asked leave to lease to Thomas Canavan from March 1, 1900, to February 28, 1901, upon the terms at which the will authorized it to be leased to him during the life of testator's widow, and under which he had theretofore been renting the land, and that any sale might be subject to said tenancy. The order of the court on said petition showed the several parties to this cause present by their respective solicitors; that the court heard evidence, and arguments by counsel for complainants and defendants; and the court found it was for the benefit of all the beneficiaries that the land be leased for that year, ending February 28, 1901, and directed that it be leased to Thomas Canavan for $900, the rate fixed by the will, and that any sale to be thereafter made, be subject to said tenancy. No one excepted to or appealed from that order. The proofs then heard by the court have not been preserved in the record. On the first day of the trial of this cause, in June following, the solicitor for Mrs. Casey, Mrs. Parish and Mrs. Bowe filed a petition alleging the order of February 24th was entered without any evidence from which the court could determine the rental value of the land; they then offered to prove its rental value was $1,600 per annum; and they asked the court to rescind the former order. This the court denied. The petition filed in June was not sworn to. The mere allegation that the court heard no proof in February from which it could determine the rental value did not prove such to be fact. In the absence of a certificate of evidence showing what proof was heard on February 24th, it must be presumed the court heard evidence justifying the order made, or even that all the parties then consented. (Blair v. Ray, 103 Ill. 615; Mullen v. The People ex rel., 138 Ill. 606.) When the petition was presented, February 24th, it was very late to get a tenant for so large a farm, and even if it was worth more than $900 per year it may well be that at that late date a larger rental could not be secured, and that may have been the reason why the record

does not disclose that any one then resisted.  Up to that time the complainants may have expected the cause would be tried and decided before the end of that rental year.  It was the spirit of the will that Thomas might occupy at $900 per year till the period of distribution, and that had been unexpectedly delayed.  It could not be known in June that Thomas would have consented in February to stay another year if a higher rent had then been required.  No one having objected to the order when made, it would have been unjust for the court in June, after the crops were in and partly cultivated, to attempt to exact a larger rental.

We conclude the decree should be affirmed.